Richard SMALL, Appellant,

v.

UNITED STATES of America, Appellee.

No. 97–5008.

United States Court of Appeals,
District of Columbia Circuit.

Argued Jan. 30, 1998.

Decided Feb. 20, 1998.

Miriam R. Nemetz, Washington, DC, argued the cause as amicus curiae supporting appellant, with whom Roy T. Englert, Jr., Washington, DC, appointed by the Court, was on the briefs.

Richard Small, Washington, DC, appearing pro se, was on the brief for appellant.

William R. Cowden, Assistant United States Attorney, Washington, DC, argued the cause for appellee, with whom Mary Lou Leary, United States Attorney at the time the brief was filed, R. Craig Lawrence, Robert E.L. Eaton, Jr., and Linda Otani McKinney, Assistant United States Attorneys, Washington, DC, were on the brief.

Before: WALD, TATEL and GARLAND, Circuit Judges.

WALD, Circuit Judge:

Richard Small asserts that the United States failed to make adequate efforts to give him notice of forfeiture proceedings affecting property that he claims to own. The district court granted summary judgment for the United States, concluding that the United States's efforts to contact Small met the standards set by the Due Process Clause. On appeal, Small contests this finding. We find that the United States should have tried harder to contact Small before implementing the forfeiture, and that, as a result, the purported forfeiture was unconstitutionally effected.

## I. BACKGROUND

On January 29, 1993, Richard Small was arrested in Washington, D.C.'s Union Station for suspected narcotics offenses. During the arrest, agents of the United States Drug Enforcement Administration ("DEA") took $1,813.10 in cash from Small. Shortly thereafter, the DEA initiated administrative forfeiture proceedings.

Administrative forfeiture is a device that permits the United States to determine whether property in its custody is unclaimed, and, if it is, to take ownership without the trouble and expense of court proceedings. The procedures invoked by the United States in this case apply by their terms to forfeitures conducted by customs officials; they are made applicable to seized drugs and associated property by 21 U.S.C. § 881(d) (1994). Under these procedures, the first step is to send written notice to "each party who appears to have an interest in the seized article," and to publish notice of the intended forfeiture for three successive weeks. 19 U.S.C. § 1607(a) (1994). Possible claimants then have twenty days in which to file a claim and post a bond. See 19 U.S.C. § 1608 (1994). If no claims are filed, the property is forfeited, and may be sold at auction or otherwise disposed of, see 19 U.S.C. § 1609 (1994); if there are claimants, the United States may either give them the property, or, if it wishes to contest their claim, it may initiate civil forfeiture proceedings in court.

This was the basic procedure the DEA attempted to carry out in this case. The

agency published a notice of the forfeiture in *USA Today*, and sent notices by certified mail to the two addresses it had for Small—his previous home address, and his address at the D.C. Jail, where he was being held pending trial. Somebody (it is unclear who) signed for the letter sent to Small's previous home address, but apparently failed to forward the letter to Small.

The exact trajectory of the letter sent to the D.C. Jail is uncertain. The letter was mailed on March 1, 1993, and the receipt for the letter was signed by somebody other than Small, presumably D.C. Jail staff, on March 11, 1993.[1] For reasons unclear, however, the letter was then returned to the DEA, stamped "RETURN TO SENDER." It appears that the letter was initially accepted at the D.C. Jail, but later refused, so that the DEA received back first a signed receipt, and then, later, a returned letter; the date on which the DEA received the returned letter is unknown. The DEA made no further attempts to contact Small. Instead, it went ahead and completed the administrative forfeiture process, on April 16, 1993.

We now shift scenes to the Western District of Virginia. Some time after the United States wrapped up its forfeiture proceedings, Small was tried and convicted in that district on narcotics charges. (He is now an inmate at a federal prison in Indiana.) At the conclusion of his trial, Small filed a *pro se* motion seeking the return of his seized property. The district court found, applying Fourth Circuit caselaw, *see United States v. Garcia*, 65 F.3d 17, 19–20 (4th Cir.1995), that this motion could only be made in the district in which the property was seized, and denied it. Small then filed his motion anew in the District for the District of Columbia; the district court (properly) construed the motion as a civil complaint.

The United States then moved to dismiss or in the alternative for summary judgment, asserting that the administrative forfeiture had conclusively terminated Small's claim to

the money, and, in particular, that the United States had made adequate efforts to notify Small of the forfeiture. The district court agreed, and granted summary judgment for the United States. On appeal, Small challenges the district court's conclusion that the United States's efforts to give him notice were adequate.[2]

## II. ANALYSIS

"An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314, 70 S.Ct. 652, 657, 94 L.Ed. 865 (1950). As *Mullane* made clear, the Due Process Clause does not demand actual, successful notice, but it does require a reasonable effort to give notice. "[P]rocess which is mere gesture is not due process. The means employed must be such as one desirous of actually informing the absentee might reasonably adopt to accomplish it." *Mullane*, 339 U.S. at 315, 70 S.Ct. at 657.

The means employed by the government here were not reasonably designed to inform Small of the pending forfeiture. As to the notice published in *USA Today*, the *Mullane* Court observed that "[c]hance alone brings to the attention of even a local resident an advertisement in small type inserted in the back pages of a newspaper." *Mullane*, 339 U.S. at 315, 70 S.Ct. at 658. Almost fifty years after *Mullane*, in an increasingly populous and mobile nation, newspaper notices have virtually no chance of alerting an unwary person that he must act now or forever lose his rights; they are no more effective than publishing a notice in the *Federal Register*. *Mullane* recognized that notice by publication is adequate only in certain circumstances; "in the case of persons missing

---

1. The United States listed this date as March 3 in a declaration filed in the district court. But March 11 is the handwritten date that appears on the copy of the receipt that is in the record; on appeal, the United States concedes that March 11 is the right date.

2. This court appointed an *amicus curiae* to represent Small on his appeal, a task that she discharged very well.

or unknown, employment of an indirect and even a probably futile means of notification is all that the situation permits." *Id.* at 317, 70 S.Ct. at 658.

█ The notice sent to Small's house was clearly insufficient; when the government knows (or can easily ascertain) where a person may be found, it must direct its notice there, and not to some other address where the designee formerly resided. Here, the government knew that Small was in prison, and it had an obligation to send adequate notice to him there. *See Robinson v. Hanrahan,* 409 U.S. 38, 40, 93 S.Ct. 30, 31–32, 34 L.Ed.2d 47 (1972) (per curiam).

█ The notice sent to (and returned from) the D.C. Jail proved inadequate as well. The United States asserts, citing *Sarit v. DEA,* 987 F.2d 10, 14 (1st Cir.1993), that the adequacy of mailed notice is "measured from the moment at which the notice was sent." Thus, the United States avers, if notice is adequate when mailed, it cannot become inadequate in light of later information or developments. We disagree.

*Sarit* involved facts resembling, but distinguishable from, those here. In *Sarit,* the DEA sent a notice of forfeiture to known claimants; the notice was returned unclaimed. The DEA made no further efforts to give notice, despite the fact that it knew the name and address of the claimants' counsel. The panel observed that the case was "a close one," *id.* at 14, but concluded that the United States in a court filing had set forth enough information on the planned forfeiture to put counsel on notice that it would occur. *See id.* at 15–16. There was no comparable filing in this case.

As to *Sarit*'s dictum that the adequacy of notice is measured at the time notice is sent, *Sarit* said that only in "exceptional circumstances" would the United States be required to try to give notice again after it has learned that its initial attempt has failed. *Id.* at 15. *Sarit*'s suggestion that this duty is limited to "exceptional circumstances" seems to us inconsistent with *Mullane*'s rule that "[t]he means employed must be such as one desirous of actually informing the absentee might reasonably adopt to accomplish it." 339 U.S.

at 315, 70 S.Ct. at 657. A reasonable person presented with a letter that has been returned to sender will ordinarily attempt to resend it if it is practicable to do so; this is true not only in "exceptional circumstances," but also in the most mundane ones, such as when mail is returned for insufficient postage or because it was misaddressed. *See Armendariz–Mata v. United States Dept. of Justice,* 82 F.3d 679, 683 (5th Cir.1996) (applying *Mullane* to returned mail without requiring "exceptional circumstances"); *Torres v. $36,-256.80 U.S. Currency,* 25 F.3d 1154, 1161 (2d Cir.1994) (same). Of course, if sending the letter again would require an "impracticable and extended search[ ]" for its addressee, *Mullane,* 339 U.S. at 317, 70 S.Ct. at 659, then a reasonable person would not try again, and due process does not require another attempt.

█ The question, then, is under what circumstances the government must resend notice after learning its notice was not delivered on the first attempt. Timing is one element of the answer. The point of *Mullane* is to define what process is required "in any proceeding which is to be accorded finality." 339 U.S. at 314, 70 S.Ct. at 657. At some point, a forfeiture will reach a point of no return; if the United States makes a constitutionally adequate effort to give notice before then, the proceeding will be accorded finality, and the United States need not reopen it in light of information acquired afterwards. The United States suggested at oral argument that the letter it sent to the D.C. Jail may not have been returned to it until after the administrative forfeiture became final. But the United States failed to record the date on which it received the letter back; information on that issue is within the government's exclusive control, and so the government, and not Small, must bear the burden of this gap in the record.

█ The effect of later-acquired information also turns on what the United States knows about a claimant. When the United States learns that a letter has not been delivered, it may in some cases be able to aver that it has done its best, and that it must now treat the claimant as "missing." *Mullane,*

339 U.S. at 317, 70 S.Ct. at 658–59.[3] But if the United States has some additional piece of information that a reasonable person would use to locate the claimant, it is obliged under *Mullane* to try again, unless it would be burdensome to do so. *See, e.g., United States v. Rodgers,* 108 F.3d 1247, 1252–54 (10th Cir.1997) (finding that, when a notice mailed to one address was returned undelivered, the government should have tried another address at which it knew that the claimant received mail, stored property, and paid the utility bills); *Montgomery v. Scott,* 802 F.Supp. 930, 936–37 (W.D.N.Y.1992) (finding that, under the circumstances, the government should have tried to locate a claimant against whom it knew state criminal charges were pending, either through the court or through his attorney).

Certainly, if, as is true here, the government knows that a claimant is in prison, it cannot, with a straight face, claim it does not know where he is. The government can easily call the prison or the Bureau of Prisons, and find out whether the prisoner has been moved or released (and if so, to what address), or whether some problem at the prison prevented delivery. *See Armendariz–Mata,* 82 F.3d at 683 (finding, on facts indistinguishable from those here, that the government must try to give notice again when a notice sent to a jail is returned undelivered); *Torres v. $36,256.80 U.S. Currency,* 25 F.3d at 1161 (finding that, after a notice was returned with the notation "Not at Chester County Prison," the government was obliged to call the Bureau of Prisons and inquire about the inmate's whereabouts). That, or something like it, is what the United States should have done here; there is no indication that it would have been at all burdensome for the United States to take this route. Its failure to do so renders its efforts to give notice constitutionally inadequate, and invalidates the forfeiture.

### III. CONCLUSION

We accordingly reverse the district court's order granting summary judgment. On re-

mand, the district court shall grant Small a hearing on the merits of the forfeiture. *See Boero v. DEA,* 111 F.3d 301, 307 (2d Cir. 1997).

*So ordered.*

---

**3.** This is not to say that this claim will always be credible; it is possible that, before giving up, a reasonable person would try other ways of locating a claimant—checking telephone listings, for instance. We do not address this question here.