

2001 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

2-1-2001

# Foehl v. United States

Precedential or Non-Precedential:

Docket 99-5460

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2001

Recommended Citation

"Foehl v. United States" (2001). *2001 Decisions.* Paper 17.
http://digitalcommons.law.villanova.edu/thirdcircuit_2001/17

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2001 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Filed February 1, 2001

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 99-5460

DON AMECHE FOEHL, SR.,
        Appellant,

v.

UNITED STATES OF AMERICA

APPEAL FROM THE
UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
(D.C. No. 98-cv-02548 )
District Judge: Honorable William G. Bassler

Submitted Pursuant To Third Circuit L.A.R. 34.1(a)
November 14, 2000

Before: SLOVITER, AMBRO, and WEIS, Cir cuit Judges

Filed: February 1, 2001

        Stanley N. Silverman, Esquire
        Law Offices of Silverman &
         Kost, P.C.
        128 South Mountain Avenue
        Montclair, New Jersey 07042

        Attorney for Appellant
        Don Ameche Foehl, Sr.

Peter W. Gaeta, Esquire
Assistant United States Attorney
Robert J. Cleary, Esquire
United States Attorney
970 Broad Street, Suite 700
Newark, New Jersey 07102

Attorneys for Appellee
United States of America

OPINION OF THE COURT

WEIS, Circuit Judge.

Plaintiff filed this civil action seeking to invalidate the administrative forfeiture of $93,163 in United States currency, which he now asserts was his pr operty. The crux of his complaint is that the Drug Enforcement Administration did not properly notify him of the impending forfeiture. The DEA made a single attempt at notification by mailing a letter to the plaintiff 's for mer address. This letter was returned with the notation "Attempted Not Known." Given the circumstances described in this r ecord, minimal, reasonable effort would have enabled the government to locate plaintiff and send a letter to a curr ent residence. In the absence of sufficient notice, we conclude that it was error to enter summary judgment for the gover nment, and we will reverse.

On February 22, 1993, the pickup truck driven by plaintiff Don Ameche Foehl, Sr. was pulled over for speeding by Beaumont Township police in Jef ferson County, Texas. The officers searched the truck and discovered $93,163 in cash in the spare tire. A small quantity of marijuana was found in an additional tir e laying in the bed of the truck. Although Foehl allegedly denied ownership of the currency at the scene, he r efused to sign a document to that effect.

Foehl produced a vehicle registration car d verifying that the pickup truck was owned by his wife, Bonnie Foehl, of 8817 Lott Road, Eight Mile, Alabama. The parties dispute, however, whether Foehl provided police with a current

address for himself at the time of the arr est. He admits producing an Alabama driver's license showing a prior address of 103 So. Thompson Court, Chickasaw, Alabama. Foehl alleges, however, that he told the officers that his residence had changed to 8817 Lott Road,1 Eight Mile, Alabama, and that he had not yet obtained a license reflecting the change of address. He also contends that he again gave the police the Lott Road address while being fingerprinted at the Beaumont Township Police Station.

The arresting officer's report, in contrast, lists only the Thompson Court residence. In his declarationfiled in the District Court, the officer said that Foehl never provided an address other than the one at Thompson Court, but he admitted that documents found in the vehicle indicated that Don Ameche Foehl, Jr. and Bonnie Foehl r esided at Lott Road.

Plaintiff posted $100 cash bail and the Beaumont police released him on the day of his arrest. He asserts that at the time of his release the police gave him the following: a copy of the arrest report, a notice to appear in court, receipt for the bail money, a receipt for the truck's impoundment, and a receipt for the approximately $93,000 in currency. All of these documents, he alleges, referred to the Lott Road address.

On March 12, 1993, the District Clerk for Jef ferson County, Texas, issued Notices of Forfeiture for the pickup truck to Foehl and his wife at 8817 Lott Road. Sent by certified mail, the notices were deliver ed to that address on March 15th. The return-receipt cards were signed by a "Carol Barnhill" and retur ned. The record contains no information about the identity of this person or what her relationship to the plaintiff might have been.

Bonnie Foehl's attorney filed a claim for the truck on her behalf on April 5, 1993. Because Foehl had not joined in his wife's claim, he was served notice in person at the

_____

1. At various points in the record, the address is listed as 8817 or 8825 Lott Road. A DEA agent explained that number 8817 appears to be plaintiff 's auto repair garage, while his home is located on the adjoining plot, number 8825. We will treat the Lott Road addresses as one.

3

Jefferson County courthouse on June 23, 1993, when he appeared in connection with the chargesfiled by the Beaumont police. The proceeding involving the truck was settled some weeks later.

Meanwhile, on March 5th, 1993, the Beaumont police had contacted the DEA, which ultimately "adopted" the seized cash2 and accepted the case for administrative forfeiture. A letter from the DEA advising plaintiff of the proposed forfeiture was sent by certified mail on March 29, 1993 to the Thompson Court address. The letter was returned with the notation "RETURNED TO SENDER –– ATTEMPTED NOT KNOWN." It is not clear on what date the letter was returned. On April 7, April 14, and April 21, 1993, the DEA published Notice of Seizure in the USA Today newspaper.

On April 19, 1993, DEA headquarters, whose location is not revealed in the record, asked its Houston division for alternative addresses for plaintif f. That office responded that "[c]ase files and case agent have no other addresses available." So far as the record r eveals, the DEA made no other efforts to determine the plaintif f 's whereabouts, nor did it further attempt to notify him of the pr oceedings. The currency was forfeited on June 18, 1993.

Months before his arrest in Texas, plaintiff had been the subject of a separate and unrelated DEA investigation. Law enforcement officers had spent several weeks observing events at the Lott Road location. Convinced that plaintiff was involved in drug trafficking, the DEA obtained an indictment in the United States District Court for the Southern District of Alabama on May 20, 1993, charging him with violating narcotics laws. He was arr ested six days

_____

2. Seizures performed by state or local law enforcement officials are "adopted" by the DEA when it takes custody of the seized property and treats it as if the agency had made the initial seizure. The DEA then institutes forfeiture proceedings in accordance with federal law. The Attorney General is authorized to shar e the forfeited property with local law enforcement organizations, assuring that the proportion given "bears a reasonable relationship to the degr ee of direct participation of the State
or local agency in the law enforcement effort resulting in the forfeiture . . . ." 21 U.S.C. S 881(e)(3)(A).

later and released on his own recognizance, with "Lott Road" listed as his address. After entering a plea bargain, he began a 60-month sentence on February 8, 1994.

In a declaration filed in the case before us, Foehl asserted that he and his wife tried continuously to r eclaim the money but were thwarted in every attempt. He sent several letters to the Beaumont police, but the only r esponse he received allegedly stated that he could not pursue his claim until he had completed his federal sentence.

Foehl contends that it was not until 1998, thr ough the efforts of his current counsel, that he learned that the DEA had forfeited the currency shortly after receiving it from the Beaumont police. Listing his address as Union County, New Jersey, he filed a complaint in the United States District Court for the District of New Jersey in June 1998, seeking to overturn the forfeiture.

The District Court granted summary judgment in favor of the government, relying on several gr ounds. It concluded that Foehl had given the Beaumont police the Thompson Court address, and that he had presented no evidence that the DEA was, or should have been, aware that the information was incorrect. Foehl had not been in custody when the letter was sent; therefore, the Court reasoned that notice by certified mail to the Thompson Court location was constitutionally sufficient.

The District Court also held that the claim was barr ed by the doctrine of laches because the five-year delay in bringing the claim was both unreasonable and pr ejudicial to the government. In addition, the Court pointed out that Foehl's complaint cited the Federal Tort Claims Act, 28 U.S.C. S 1346(b), as a basis for jurisdiction, but that the two-year statute of limitations had expired on that cause of action.

The parties agree that the Tort Claims Act does not apply here. Foehl contends that the one refer ence to the Act in his complaint was inadvertent, and that his claim is predicated on the Administrative Procedur e Act, 5 U.S.C. S 701 et seq., which was cited at the beginning of his complaint and to which Counts One through Five referred. Foehl argues that the District Court should have granted

5

him leave to clarify his complaint to reflect a claim under the Administrative Procedure Act, or , alternatively, assumed jurisdiction pursuant to 28 U.S.C. S 1331, as the district judge conceded he could have done.

I.

This Court exercises de novo review over a district court's grant of summary judgment. See Goosby v. Johnson & Johnson Med., Inc., 228 F.3d 313, 318 (3d Cir. 2000). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); see also Goosby , 228 F.3d at 318. We view the facts in the light most favorable to the party against whom summary judgment was entered. Medical Protective Co. v. Watkins, 198 F .3d 100, 103 (3d Cir. 1999).

We address first the District Court's holding that the claim was barred by the Federal Tort Claims Act's statute of limitations. We would agree with that conclusion if that Act were the basis for Foehl's suit. Wefind, however, that this case was brought pursuant to the Administrative Procedure Act.3

It is understandable that the District Court assumed that the Tort Claims Act was the basis for the plaintiff 's case, given that plaintiff cited that statute specifically. On the other hand, in the heading of the complaint and in all five counts, plaintiff cited the Administrative Pr ocedure Act. The civil action cover sheet also referred to the APA "to challenge and seek recovery of approximately $94,000 in currency confiscated from the plaintif f."

_____

3. The Administrative Procedure Act makes reviewable any "final agency action for which there is no other adequate r emedy in a court," 5 U.S.C. S 704, so long as the statute under which the agency acted does not preclude judicial review or the agency action is not "committed to agency discretion by law." Id. S 701(a).

6

II.

Although summary judgment was properly enter ed
against any claim under the Federal Tort Claims Act, the
Court had the authority to consider the complaint under a
number of alternative theories. In United States v. McGlory,
202 F.3d 664, 670 (3d Cir. 2000) (en banc), we held that a
district court had equitable jurisdiction "to consider a claim
that a person received inadequate notice of completed
administrative forfeiture proceedings."4 At least one court
has found that the Administrative Procedur e Act itself
creates a right of review of federal agency actions
presenting issues of adequate notice. Ar mendariz-Mata v.
DEA, 82 F.3d 679, 682 (5th Cir. 1996).

Indeed, "the federal courts have universally upheld
jurisdiction to review whether an administrative forfeiture
satisfied statutory and due process r equirements." United
States v. Woodall, 12 F.3d 791, 793 (8th Cir. 1993) (finding
jurisdiction in equitable principles); United States v. Minor,
228 F.3d 352, 357 (4th Cir. 2000) (finding jurisdiction to
consider the plaintiff 's "constitutionally-derived equitable
challenge to the administrative forfeitur e of the currency
under the provisions for general federal question
jurisdiction"); United States v. Dusenbery , 201 F.3d 763,
766 n.7 (6th Cir. 2000) (same); United States v. Clagett, 3
F.3d 1355, 1356 (9th Cir. 1993) (same); Sarit v. Drug
Enforcement Admin., 987 F.2d 10, 16-17 (1st Cir. 1993)
(same). In other words, a claimant can "collaterally attack
an inadequately noticed administrative forfeiture by suing
for equitable relief, i.e., the r eturn of the seized property
under 28 U.S.C. S 1331, via the waiver of sovereign
immunity found in section 702 of the Administrative
Procedure Act." David B. Smith, 1 Prosecution and Defense
of Forfeiture Cases, S 6.02, at 6-29 (2000).

_____

4. This is so even if the claim is styled as a Federal Rule of Criminal
Procedure 41(e) motion for the recovery of property and is brought after
criminal proceedings are completed; courts are to treat such claims as
civil suits seeking to set aside forfeitures. McGlory, 202 F.3d at 670;see
United States v. Garcia, 65 F.3d 17, 20 (4th Cir. 1995) (same); Thompson
v. Covington, 47 F.3d 974, 975 (8th Cir . 1995) (same); United States v.
Giovanelli, 998 F.2d 116, 118 (2d Cir . 1993) (same).

7

In light of this substantial authority, we conclude that the District Court was correct in considering the constitutional issue of adequate notification under theories other than the Tort Claims Act.

III.

At the time of plaintiff 's arrest, the procedure for initiating an administrative forfeitur e in a drug case was governed by 21 U.S.C. S 881 and 19 U.S.C. SS 1607-08. The government was required to send a letter notifying the property owner of the impending forfeitur e and to publish notice of the seizure for three successive weeks in a newspaper of national circulation. 19 U.S.C.S 1607(a).

In giving effect to these statutory requirements, due process requires that notice to the property owner be "reasonably calculated, under all the cir cumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." Mullane v. Central Hanover Bank & Trust Co. , 339 U.S. 306, 314 (1950). In Mennonite Board of Missions v. Adams, 462 U.S. 791, 800 (1983), the Court reiterated Mullane's due process standard, stating that "[n]otice by mail or other means as certain to insure actual notice is a minimum constitutional precondition to a proceeding which will adversely affect the liberty or property interests of [a] party . . . if its name and address are r easonably ascertainable." More specifically, the Court has cautioned that "[f]orfeitures are not favored; they should be enfor ced only when within both letter and spirit of the law." United States v. One 1936 Model Ford V-8 De Luxe Coach, 307 U.S. 219, 226 (1939).

We have held that a notice of forfeitur e mailed to an owner's home when the government knew that the defendant was in jail did not satisfy constitutional due process requirements. United States v. $184,505.01 in U.S. Currency, 72 F.3d 1160, 1163-64 (3d Cir. 1995); see also Robinson v. Hanrahan, 409 U.S. 38, 40 (1972) (notice of state forfeiture proceedings was inadequate when mailed to claimant's home while claimant was imprisoned); Lopez v. United States, 201 F.3d 478, 482 (D.C. Cir. 2000) (same conclusion, even though claimant's wife received notice);

8

Torres v. $36,256.80 U.S. Currency, 25 F.3d 1154, 1161 (2d Cir. 1994) (notice inadequate "wher e the . . . notice . . . is returned undelivered, the intended r ecipient is known by the notifying agency to be in government custody, and the agency fails to take steps to locate him").

Although this Court has never required"actual notice," we have held that mailing notice to the United States Marshals Service, in whose custody the claimant was held at the time of the mailing, was constitutionally inadequate. McGlory, 202 F.3d at 673–74.5 In United States v. One Toshiba Color Television, 213 F .3d 147, 155 (3d Cir. 2000) (en banc), we held that the government had the burden of establishing that the procedures at the prison to which a forfeiture notice was sent were r easonably calculated to insure delivery of the notice to the intended r ecipient. See also Minor, 228 F.3d at 358 (adopting One Toshiba standard); Small v. United States, 136 F.3d 1334, 1337–38 (D.C. Cir. 1998) (when government has information that a reasonable person would use to locate the claimant, it is obliged to resend notice if doing so would not be burdensome); Woodall, 12 F .3d at 794–95 (placing a greater burden on government in notifying an incarcerated claimant or one whom the government is pr osecuting). These cases illustrate that, particularly wher e the claimant is in a place chosen by the government, due pr ocess may require that the government make multiple attempts at notification if the claimant's name and addr ess are reasonably ascertainable. Accord United States v. Rodgers, 108 F.3d 1247, 1251 (10th Cir. 1997) (charging the DEA with information about the plaintiff 's address provided by local authorities' seizure records).

In this case, the District Court relied on Madewell v. Downs, 68 F.3d 1030 (8th Cir. 1995). There, notice was sent to the claimant's last known address, the one he admitted giving to the authorities upon his arr est. The letter was returned marked "Moved. Left no address." Id. at 1035. Although the claimant alleged that the DEA knew his

_____

5. Other courts have taken a more relaxed view on the adequacy of notice. See Whiting v. United States, No. 99–1141, 2000 WL 1672813, at *6 n.6 (1st Cir. Nov. 13, 2000) (citing cases).

correct address, the Court refused to credit that assertion in the absence of evidence that the DEA had any contact with the claimant that would have alerted it to his change of address. Id. The Court concluded that the lack of notice was the result of the claimant's own conduct and, accordingly, granted summary judgment to the government. Id. at 1047.

We question Madewell's holding on notice, particularly in the context of a motion for summary judgment, and note that it appears inconsistent with United States v. Cupples, 112 F.3d 318 (8th Cir. 1997),[6] decided later by the same Court. In any event, we find Madewell distinguishable.

Here, the District Court stated that the gover nment directed its "notification to the addr ess that Plaintiff provided to police when he was arrested." Citing Madewell, the Court observed that when a person moves, it is his obligation to advise the Post Office of his change of address; and therefore, lack of notice resulting from his failure to do so could not be attributed to the government. Unlike Madewell, however, the parties to this case sharply contest the address Foehl gave to the Beaumont police at the time of his arrest. Madewell, therefor e, is not helpful in resolving the case before us at the summary judgment stage.

When the notice sent to Thompson Court was r eturned to the DEA, the agency did nothing more than make a cursory check with its division office in Houston, T exas, which, according to the record, had no prior involvement with Foehl's case. Because his driver's license was issued in Alabama, one would have expected the DEA to check with its New Orleans Division, which includes the offices in Alabama.

The report prepared by the police on the date of the arrest in Texas shows that the Mobile, Alabama Sheriff 's Office had informed the Beaumont authorities that Foehl was a known marijuana trafficker and was about to be indicted by federal authorities.[7] Had the DEA contacted its

_____

6. In Cupples, the Court observed that in the circumstances there, whether the claimant received actual notice was a question of fact to be determined by the trial court. 112 F.3d at 320.
7. Chickasaw and Eight Mile are located about eight miles apart on the northern outskirts of Mobile, Alabama.

10

Alabama branch, it almost certainly would have lear ned of Foehl's impending arrest and of the Lott Road address.

It is a fair inference that the DEA, having adopted the currency from the Beaumont police, was aware that the Texas authorities were undertaking for feiture proceedings on the truck. In those circumstances, it is difficult to understand why the DEA did not confirm Foehl's address with the Beaumont police or the Jefferson County district attorney. A simple phone call to either would have revealed that notice of the truck's forfeiture had been mailed to Foehl and his wife at Lott Road.

Moreover, although Foehl was not in jail at the time the notice was returned, he had been released on bail.8 We can safely assume that the Beaumont police had a very good idea of his whereabouts during that time. Accord Woodall, 12 F.3d at 794 (holding that where defendant is released to an address known to the government, due process requires the government to notify defendant at that address).

Finally, the record establishes that a duplicate license was issued to Foehl on March 3, 1993, listing Lott Road as his address. A call to the Alabama License Bur eau in March or April of 1993 would have revealed his then–current address.

The record in this case, viewed in the light most favorable to Foehl as the nonmoving party, reveals that he lived at the Lott Road address at the time of the notice and forfeiture. After learning that Foehl did not receive the letter mailed to the Thompson Court address, the DEA, with the most minimal effort, could have obtained his correct address and notified him of the impending for feiture.

We do not impose on a forfeiting agency the burden of checking all possible sources for a claimant's address. The
_____

8. The record does not reveal when the notice was returned to the DEA. In Small, 136 F.3d at 1337, the Court resolved this issue in the claimant's favor, stating "the United States failed to record the date on which it received the letter [notifying claimant of forfeiture] back; information on that issue is within the gover nment's exclusive control, and so the government . . . must bear the bur den of this gap in the record."

11

DEA was, however, obligated under Mullane to provide notice reasonably calculated under all the cir cumstances to apprise him of the proceedings. The DEA had four obvious sources: the Beaumont Township Police Department, the Jefferson County district attorney, the DEA office for Alabama, and the Alabama Driver's License Bur eau. The DEA's failure to check with any of these sour ces was unreasonable under the circumstances, and its minimal effort to notify plaintiff of the for feiture cannot fairly be considered to be "within both letter and spirit of the law." One 1936 Model Ford, 307 U.S. at 226.

Nor do we require or even imply that notice by writing or other means be certain to insure actual notice as a minimum constitutional precondition. Our focus here is rather on the glaring lack of effort by the DEA to ascertain Foehl's correct address. The constitutional mandate of adequate notice cannot be treated as empty ritual.

Because of disputed material facts and errors in the application of relevant legal authorities, the record in this case does not support the grant of summary judgment in favor of the government, and we are, ther efore, compelled to reverse that ruling.

IV.

We need not reach the laches issue because the defense is not available where a judgment is void. In One Toshiba, we held that a judgment of forfeiture obtained without proper notice to a claimant is void, and that the passage of time could not transmute this nullity into a binding judgment. One Toshiba, 213 F.3d at 157–58. At least three Courts of Appeals have decided similarly. See Cly`more v. United States, 217 F.3d 370, 378 (5th Cir . 2000), aff 'd on panel reh'g, No. 99–50860, 2000 WL 1206012, at *1 (5th Cir. Aug. 24, 2000); Kadonsky v. United States, 216 F.3d 499, 508 (5th Cir. 2000); United States v. Marolf, 173 F.3d 1213, 1216–18 (9th Cir. 1999); Clymor e v. United States, 164 F.3d 569, 572–74 (10th Cir. 1999). But see Dusenbery, 201 F.3d at 768 (treating inadequate notice as voidable); Boero v. Drug Enforcement Admin., 111 F.3d 301, 307 (2d Cir. 1997) (same). Because the recor d at this stage does not

12

support a finding of proper notification, laches is not a proper defense.

V.

One other matter requires resolution on remand. The government denies that Foehl was a resident of New Jersey at the time he filed his complaint, contending that he currently lives in Alabama. Indeed, the government asserts that Foehl was an inmate in a federal prison in Arkansas when he began this suit and, accordingly, was not entitled to lay venue in New Jersey.

The District Court noted that the government's objection attacking venue may have been untimely and therefore waived. In view of its disposition of the case, however, the Court found it unnecessary to decide the issue. We are inclined to agree that the challenge to venue may have been waived. Nevertheless, the District Court may wish to transfer the case to a more appropriate district in accordance with the flexibility provided by 28 U.S.C. SS 1404 and 1406.

Because this suit was brought under the Administrative Procedure Act rather than as a motion under Federal Rule of Criminal Procedure 41(e), we need not be concerned by the venue restrictions in that rule.9  Here, there were no federal criminal proceedings to which the forfeiture was related, nor are any in progress. Moreover, currency is fungible and, unlike a res, which has some tangible

_____

9. We note that in cases brought under Federal Rule of Criminal Procedure 41(e), the question of the proper venue has caused a circuit split. Even though the courts treat the proceedings as civil suits, the Courts of Appeals for the Fourth and Tenth Circuits have decided that when the criminal proceeding has been concluded, any suit to set aside the forfeiture must be filed in the district in which the property was seized. See Clymore, 164 F.3d at 574-75; Garcia, 65 F.3d at 20-21. The Second and Eighth Circuits, on the contrary, have held that the district court in which the criminal proceeding had taken place was the proper venue. See Thompson, 47 F.3d at 975; Giovanelli, 998 F.2d at 119. This circuit split would be resolved by the proposed change in Federal Rule of Criminal Procedure 41(g) designating the district in which seizure occurred as the location where a motion must be filed.

13

connection with a definite location, presents no compelling venue problems. We therefor e consider this suit as governed by the broader venue provisions of 28 U.S.C. S 1391 and 28 U.S.C. S 1406.

It appears that resolution of the facts af fecting the issues in this case will require further pr oceedings. Even if Foehl did reside in New Jersey at the relevant time, the convenience of the parties and witnesses would ar guably be better served if the proceedings were conducted in the Eastern District of Texas or the Souther n District of Alabama. New Jersey does not appear to be a convenient location for any of the parties involved, and the District Court may wish to transfer this case to a mor e appropriate venue for disposition.

Accordingly, the judgment of the District Court will be reversed and the case remanded for further proceedings consistent with this opinion.

14

SLOVITER, Circuit Judge, Dissenting.

I cannot join the majority's opinion. I believe it fails to recognize the express limitation in this court's prior cases that consider what is required to give notice of forfeiture. In the name of due process, the majority expands that requirement beyond the applicable pr ecedent and extends the government's duty beyond reasonable limits without providing a workable benchmark.

A.

The Supreme Court enunciated the overar ching principle of due process notice in Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 314 (1950), stating that "[a]n elementary and fundamental requirement of due process . . . is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." That principle was applied in Robinson v. Hanrahan, 409 U.S. 38 (1972), wher e the Supreme Court held that notice mailed to a prisoner's home address by the state in whose custody the prisoner was held failed to meet the standard set in Mullane. Thereafter, this court was presented with three cases relating to the adequacy of notice of different for feitures to the same prisoner, Reginald McGlory: United States v. $184,505.01 in U.S. Currency, 72 F.3d 1160 (3d Cir. 1995) (notice deficient when sent to last home address of claimant the government knew to be incarcerated); United States v. McGlory, 202 F.3d 664 (3d Cir. 2000) (en banc) (notice inadequate when sent to United States Marshal's Service located in courthouse where claimant was convicted rather than to prison where he was incarcerated); and United States v. One Toshiba Color Television, 213 F .3d 147 (3d Cir. 2000) (en banc) (notice inadequate when sent to prisoner's pre- incarceration address and his ex-wife's home).

In all three McGlory cases, the dispositive fact with regard to the due process requir ement was that the person seeking to challenge the forfeiture was in prison at the time of the notice. As we stated in One Toshiba , "the circumstances of prisoners differ gr eatly from free citizens,

15

a fact that potentially alters the evaluation of what steps are reasonably calculated to provide notice. When an individual is incarcerated at a location of the government's choosing, the government's ability to find and directly serve him or her with papers is at or near its zenith. Not only does the government know where to find the person, it can be equally sure that he or she will be ther e when the papers are delivered. Indeed, it can even move the person to a more convenient location if it so chooses." 213 F.3d at 154.

B.

The majority relies on these and other cases where the issue was the nature of the government's duty to give notice of forfeiture to a prisoner whose whereabouts the government must be presumed to know, unlike this case where the appellant was at large. The case at hand more closely resembles Madewell v. Downs, 68 F.3d 1030, 1046 (8th Cir. 1995), than any case in the McGlory trilogy. In Madewell, the DEA mailed a notice by certified mail to the address the property owner gave when arr ested and took no further action directly to notify him, even after the letter was returned marked "Moved. Left no address." Before the notice was sent, Madewell had given his new addr ess to the prosecutor in the related state pr oceeding, but the DEA never called the prosecutor. The Eighth Circuit held that the DEA's notification efforts were constitutionally sufficient, noting that Madewell like Foehl was not in federal custody, not being prosecuted for a federal offense, and not on release to a new address by a federal court during the notice period. The court found the DEA had no obligation to inquire as to Madewell's addr ess because it had no notice the address had changed. See Madewell, 68 F.3d at 1050.

I do not disagree with the propositions the majority derives from the cases it cites, namely that: (1) the government does not satisfy due process when it sends a notice to an interested party's home addr ess knowing the party is in prison; and (2) the government has a heightened burden to ensure notice to an incar cerated interested party, particularly when it incarcerated the party. However, these

16

propositions are neither inconsistent with Madewell nor compel a finding that the notice in this case was inadequate. The majority fails to address the following obvious distinctions between the cases establishing these principles and this case: (1) the DEA did not know Foehl did not reside at the Thompson Court addr ess when it mailed the notice there; (2) Foehl was not incarcerated at the time the government sought to give notice of the forfeiture, nor was he subject to any version of federal custody during the notice period; and (3) Foehl violated Alabama law by failing to update the address on his driver's license.

1. The DEA Did Not Know the Thompson Court Address
        Was Incorrect

Judging the DEA's initial notification effort at the time it was made, it was reasonably calculated to notify Foehl of the impending forfeiture. This good faith effort is completely distinguishable from the notification ef forts this court found deficient in the McGlory trilogy. In the McGlory cases, the government had reason to know when it sent the notices that McGlory did not reside at the addr esses to which it sent them.

It is clear that when the government mails a notice to an address where it knows an interested party does not reside (for example, because it has incarcerated the party) it has not made reasonable efforts to notify the party. See $184,505.01 in U.S. Currency, 72 F .3d at 1163–64 (citing Robinson, 409 U.S. 38, and other cases). However , I am not persuaded by the majority's apparent equation of such a situation to one in which the government mails a notice to an address where it believes a claimant r esides, only to discover that the address is invalid when the notice is returned undelivered. In the first situation, the notice was constitutionally inadequate when sent. In the second, the notice, when sent, was reasonably calculated to reach the claimant. Cf. Madewell, 68 F.3d at 1046 ("Whether notice was adequate is measured at the time the notice was sent.") (quoting United States v. Woodall,12 F.3d 791, 794 (8th Cir. 1993)).

2. Foehl Was Not Incarcerated

Because Foehl was not incarcerated during the notice period, he did not "lack[ ] the ability to take steps to ensure

17

that his mail [was] actually delivered to him," One Toshiba, 213 F.3d at 154, one of the important bases on which we predicated that decision. As we explained,"[i]n the outside world, an individual who changes addresses can arrange to have mail forwarded and can notify inter ested parties as to the change of address." Id. This is particularly applicable to Foehl, who was well aware that the officers had found and seized $93,163 in cash along with marijuana hidden in spare tires in his wife's truck while he was driving it.

Moreover, the fact that Foehl was r eleased by the Beaumont police on bail, mentioned by the majority, did not impact in any way his ability to take steps to ensure the delivery of his mail. Nor did this non-federal"custody" give the federal government any special information concerning Foehl's whereabouts. Ther efore, the DEA was not subject to the heightened notice requir ements applicable when the claimant is in (federal) custody.

3. Foehl Did Not Comply with Alabama's Addr ess-Change Requirements

Alabama law obliged Foehl to correct his addr ess on his driver's license within thirty days of moving, which requirement is written on the back of Alabama driver's licenses. See Walton Decl., P 8, Supp. App. at 67; Exhibits F, G, Supp. App. at 79-80 (copies of the Alabama Department of Public Safety rules and regulations and the driver's license in effect in 1989). The Post Office, when asked, will forward an individual's mail fr om the old to the new address for longer than one month. See, e.g., United States Postal Service Web Page, http://www.usps.com/moversnet/q_and_a.html (January 8, 2001). Foehl claims to have moved from Thompson Court to Lott Road one year before his arrest. During that period, he did not notify the Alabama authorities of his change of address in compliance with the law. Therefore, any confusion as to his proper address caused by his driver's license is of Foehl's own creation.

C.

The majority writes that "[a]fter lear ning that [Foehl] did not receive the letter mailed to the Thompson Court

18

address, the DEA, with the most minimal ef fort, could have obtained [his] correct address and notified him of the impending forfeiture." The majority pr offers "four obvious sources: the Beaumont Township Police Department, the Jefferson County district attorney, the DEA office for Alabama, and the Alabama Driver's License Bur eau." It concludes the "failure to check with any of these sources was unreasonable under the circumstances."

Because this is not a case in which Foehl was in custody during the forfeiture notice period, ther e is no reason to place on the forfeiting agency the bur den of checking with all possible sources of Foehl's then curr ent address. The DEA's original notice, sent to Foehl's stated addr ess, satisfied due process. Nonetheless, I will consider briefly whether the DEA had any reason to look to the sources suggested by the majority.

1. The Beaumont Township Police and the Alabama
        Driver's License Bureau

When Foehl was arrested and the money and drugs seized by the Beaumont police in Jefferson County, Texas, his driver's license listed his Thompson Court addr ess. This was the address the Beaumont police provided to the DEA and thus the address that the DEA used to send its notice of forfeiture. Even if, as the majority states, Foehl "sharply contest[s]" which address he gave to the Beaumont police at the time of his arrest, there is no dispute that the Beaumont authorities sent the Thompson Court addr ess to the DEA.

Because the Beaumont police had provided thefirst invalid address taken from Foehl's driver's license, the DEA had no particular reason to believe that either the Beaumont police or the Alabama Driver's License Bur eau had a better one. The agency could reasonably assume that: (1) Foehl maintained an up-to-date addr ess on his driver's license pursuant to Alabama law; (2) Foehl would otherwise have made a point to notify the police of his actual address; and (3) the Beaumont police would have included a second address had Foehl provided one. The fact that we now know in hindsight that one or mor e of these assumptions would have been incorrect does not make them unreasonable.

19

## 2. The Jefferson County District Attor ney

Because the Jefferson County district attor ney, like the DEA, presumably received his infor mation on Foehl from the Beaumont police, it is unclear why the DEA would have expected the district attorney to have a mor e accurate address for Foehl than did the Beaumont police. Moreover, it is unclear what the district attorney, if contacted, would have told the DEA. The district attorney did have Foehl's Lott Road address as early as March 12, 1993, when he sent a Complaint of forfeiture of the truck to Lott Road. However, the receipt of service of the Complaint was not signed by Foehl or by his wife, but by "Car ol Barnhill," apparently no relation. Therefor e, by the time the DEA's March 29 notice of forfeiture was r eturned, the Jefferson County district attorney already knew Lott Road to be, at best, an uncertain address for Foehl.

## 3. The DEA Office for Alabama

The majority questions the DEA's judgment in dir ecting its inquiry regarding Foehl to DEA–Houston rather than to the DEA division covering Alabama, given that Foehl was from Alabama and that DEA–Houston "had no prior involvement with [Foehl's] case." However , there was no reason for the DEA forfeiture division to contact the Alabama division, which was not involved with the forfeiture at issue. In fact, DEA–Houston was the originating division for the forfeitur e, according to both parties' briefs. Foehl himself appears to concede that DEA–Houston was the appropriate division.[1] Therefore, the DEA's inquiry to its Houston division after its first notice to Foehl was returned constituted precisely the type of reasonable inquiry the majority suggests the DEA should have made.[2]

---

1. Foehl argues that the DEA's inquiry was ineffective, not because Houston was the wrong division but because the DEA misidentified him by inquiring about "Don Foehl" or "Don Ameche Foehl," rather than "Don Ameche Foehl, Sr."

2. One additional point the majority does not address is whether the DEA would have met with success had it made one of the suggested inquiries, obtained Foehl's Lott Road address, and sent a notice there. In fact, there is no evidence that Foehl r eceived the forfeiture notice for his wife's truck, which the Jefferson County District Attorney sent to the Lott Road address.

20

This hardly constitutes a "glaring lack of effort," as the majority chooses to characterize it.

D.

In conclusion, the relevant precedent r equires the government to take reasonable measur es to notify an interested party of impending forfeitur e proceedings. The DEA's initial notice alone, and certainly when combined with its follow-up inquiry to its Houston division, satisfies this requirement. No case obliges the government to go to extraordinary lengths in its notification ef forts, yet that is precisely what the majority holds is required. This conflicts with our repeated statements that the gover nment duly is to provide notice to an individual "whose name and address are known or reasonably ascertainable." McGlory, 202 F.3d at 672 (quotation omitted). The majority has thus raised the level of due process beyond that ever suggested by the Supreme Court or this court, and has not pr ovided any standard that the forfeiting agency should follow in the next case. It is not enough for a court to say mer ely, "do better," yet that is what the majority has done.

Therefore, I respectfully dissent.

A True Copy:
Teste:

      Clerk of the United States Court of Appeals
      for the Third Circuit