No. 2--00--0142

_________________________________________________________________

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

_________________________________________________________________

In re
 FORFEITURE OF           )  Appeal from the Circuit Court

$2,354.00 UNITED STATES         )  of Ogle County.

CURRENCY  )

                                )  No. 99--MR--19

) 

) 

(Darrel W. Barker, Petitioner-  ) 

Appellee, v. The People of the  )  Honorable

State of Illinois, Respondent-  )  Stephen C. Pemberton,

Appellant).                     )  Judge, Presiding.

_________________________________________________________________

JUSTICE O'MALLEY delivered the opinion of the court:

The State declared a nonjudicial forfeiture of property pursuant to section 6 of the Drug Asset Forfeiture Procedure Act (Act) (725 ILCS 150/6 (West 1998)).  Petitioner, Darrel W. Barker (whose name also appears in the record as "Darrell W. Barker"), the property's owner, petitioned to vacate the forfeiture, alleging that he did not receive adequate notice of the  proceeding.  The trial court granted the petition, holding that the State did not accord petitioner due process. The State appeals.  We affirm.

The facts are essentially undisputed. On August 9, 1999, petitioner filed his "Motion to Vacate Declaration of Forfeiture" (petition).  The petition alleged the following.  On May 11, 1999, petitioner was arrested for a drug offense (the criminal case).  On May 12, 1999, in case No. 99--OP--53, Gloria Barker, petitioner's wife, obtained an order of protection barring him from their home at 12795 Kennedy Hill Road in Byron.  Petitioner has not lived there since May 11, 1999. Petitioner promptly posted bond in the criminal case and was released.  

On May 14, 1999, petitioner notified the office of the circuit clerk of Ogle County that he now resided at 628 Kishwaukee Road in Rockford.  On June 2, 1999, petitioner and his attorney appeared in court in case No. 99--OP--53.  The court dismissed Gloria Barker's petition but ordered that, as a condition of petitioner's bond in the criminal case, he was to have no contact with Gloria Barker.

Petitioner alleged further that the State notified him by mail addressed to 12795 Kennedy Hill Road in Byron that his $2,354 cash was subject to a nonjudicial forfeiture.  However, petitioner did not know of the attempt to serve him by mail at the Byron address.  He did not receive notice until July 9, 1999, when his daughter told him that he had a certified letter at the Byron post office.  Petitioner asserted that the State knew that petitioner was barred from the Byron address and from contact with Gloria Barker, who lived there.  Therefore, petitioner claimed, he did not receive proper notice of the forfeiture.

The rest of the record reveals the following facts.  On May 12, 1999, petitioner posted $10,000 cash bond after he was charged with possession of cannabis with intent to deliver.  Petitioner signed the bond form and gave his address as 12795 Kennedy Hill Road in Byron.  On May 14, 1999, petitioner filed a note with the circuit clerk of Ogle County.  The note stated that petitioner had moved from the Byron address to the Rockford address.  At the hearing on petitioner's petition, the trial court observed that this note was "attached to the bond" in the court file.

On May 19, 1999, the State's Attorney sent a "Notice of Pending Forfeiture" (Notice) by certified mail, return receipt requested, to petitioner at the Byron address.  Twice, the post office tried unsuccessfully to deliver the Notice.  On June 4, 1999, the Notice was returned as "unclaimed."  On July 6, 1999, the State's Attorney filed a declaration of forfeiture and sent the Notice by certified mail to petitioner at the Byron address. On July 8, 1999, petitioner signed the return receipt for the Notice.  On August 9, 1999, petitioner filed his petition.  

In December 1999, the cause proceeded to a hearing.  The trial judge observed that, originally, the State's Attorney's office mailed the Notice to the Byron address even though petitioner had already told the circuit court clerk's office of his new address.  The State argued that, if petitioner later moved, he had the burden to tell the State his new address.  Gloria Barker's civil suit did not relieve him of this burden because the State was not a party to that suit.  Generally, the State had no obligation to "try to follow people around and try to figure out where they are."  Also, the mere return of the Notice as "unclaimed" did not alert the State to the possibility that petitioner had moved.

Petitioner responded that, until he actually received the Notice, he had never been told that the money seized in May might be forfeited.  He maintained that, by promptly notifying the circuit clerk's office of his new address, petitioner did all he could to enable the State to notify him of any forfeiture. 

After allowing petitioner to file an affidavit supporting his petition, the court granted the petition.  Relying in part on our opinion in 
People v. Smith
, 275 Ill. App. 3d 844 (1995), the court held that petitioner had been denied due process because he did not receive reasonable notice of the pending forfeiture or an opportunity under the Act to object to the forfeiture.  The judge explained that the notice was inadequate "[b]ased on the evidence here and the fact that [petitioner] notified the clerk's office of his change of address before the notice went out."  The court vacated the forfeiture without prejudice to the State's right to bring a new forfeiture proceeding.  The State timely appealed.

On appeal, the State argues that the trial court erred in holding that the State's efforts to notify petitioner of the forfeiture did not satisfy due process.  The State asserts that 
Smith
 is distinguishable and that petitioner received an adequate opportunity to respond to the forfeiture petition.  For the reasons that follow, we disagree with the State and affirm the trial court, although not on the exact grounds on which the trial court relied.

The underlying facts are essentially undisputed.  Therefore, whether petitioner received notice in accord with due process is a question of law that we review 
de novo
.  See 
Quantum Pipeline Co. v. Illinois Commerce Comm'n
, 304 Ill. App. 3d 310, 314 (1999).

The Act sets forth the procedures for the seizure and civil forfeiture of drug-related assets.  Where, as here, nonreal property with a value of less than $20,000 is seized, the State’s Attorney must provide notice of the pending forfeiture to the owner of the property in accordance with section 4 of the Act.  See 725 ILCS 150/4(A) (West 1998).  Section 4 provides that, if the owner’s name and current address are known, notice of the pending forfeiture may be provided by personal service or "mailing a copy of the notice by certified mail, 
return receipt requested
, to that address."  (Emphasis added.) 725 ILCS 150/4(A)(1) (West 1998).  The phrase "return receipt requested" is not idle language.  
People ex rel. Devine v. $30,700.00 United States Currency
, 316 Ill. App. 3d 464, 469 (2000), 
appeal allowed
, 193 Ill. 2d 599 (2001).  The mere mailing of notice, when the legislature has specified that a return receipt be requested, is not sufficient; the inclusion of the return receipt requirement indicates a legislative intent that the service of notice by certified mail is not complete until it is received by the addressee.  See 
Avdich v. Kleinert
, 69 Ill. 2d 1, 9 (1977).  Thus, the failure to receive a return receipt when one is required renders an attempted notice incomplete (see 
Avdich
, 69 Ill. 2d at 9) and invalid (see  
Devine
, 316 Ill. App. 3d at 469).  As it is undisputed that the State did not receive a signed return receipt from Barker until after the property had already been forfeited, we conclude that the State’s notice was invalid and the trial court did not err in vacating the forfeiture. 

We also conclude that the State’s attempt of service denied Barker due process.  Due process requires "notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections."  
Mullane v. Central Hanover Bank & Trust Co.
, 339 U.S. 306, 314, 94 L. Ed. 865, 873, 70 S. Ct. 652, 657 (1950).  Where a party's name and address are reasonably ascertainable,  notice by mail or other means as certain to ensure actual notice is a prerequisite to a proceeding that will adversely affect the party's liberty or property interests.  
Mennonite Board of Missions v. Adams
, 462 U.S. 791, 800, 77 L. Ed. 2d 180, 188, 103 S. Ct. 2706, 2712 (1983); 
United States v. 51 Pieces of Real Property, Roswell, New Mexico
, 17 F.3d 1306, 1316 (10th Cir. 1994).  Generally, written notice by certified mail is sufficient even if the claimant does not receive the actual notice.  
Garcia v. Meza
, 235 F.3d 287, 290 (7th Cir. 2000); 
Montgomery v. Scott
, 802 F. Supp. 930, 935 (W.D.N.Y. 1992).  However, the ultimate issue is whether the government acted reasonably under all the circumstances in relying on the mail to notify the party.  
Montgomery
, 802 F. Supp. at 936.  Although mailing a notice to an incorrect address does not necessarily violate due process, the case law reveals three scenarios where such notice is inadequate.  The most extreme situation is when the government actually knows the party's correct address but mails the notice to the wrong address.  See 
Robinson v. Hanrahan
, 409 U.S. 38, 40, 34 L. Ed. 2d 47, 49, 93 S. Ct. 30, 31 (1972); 
Small v. United States
, 136 F.3d 1334, 1337 (D.C. Cir. 1998).  In the second scenario, the State does not 
actually
 know, but 
should
 know, the party's correct address when it mails the notice.  There, because the State had not acted reasonably on its imputed knowledge, it had not satisfied due process.  Thus, in 
People ex rel. Devine v. $30,700.00 United States Currency
, 316 Ill. App. 3d 464 (2000), a forfeiture proceeding, the State mailed the notice to the property owner's home address even though he was in jail at the time.  The appellate court held that the notice did not satisfy due process because the property owner's correct address was readily ascertainable.  
Devine
, 316 Ill. App. 3d at 470-71.  
Devine
 relied in part on 
Smith
, where we held that mailing a notice to the claimant's house was inadequate because the State could easily have learned that the claimant was then residing in the Kane County jail.  
Smith
, 275 Ill. App. 3d at 849-50.

In the third scenario where notice falls short of due process, the State acts reasonably in initially sending the notice to a particular address.  However, later developments charge the State with knowing that it is not reasonably likely that the party has received the notice.  If the State does not then take reasonable measures to try to notify the party at his correct address, it has not accorded the party due process.  The State need not go to heroic lengths, and its efforts may satisfy due process even if they do not result in actual notice.  However, 
the State must do 
something
 before it deprives the party of his property.

Generally, this scenario unfolds when the original notice is returned unclaimed.  Thus, in 
Garcia
, the federal government sent the notice of forfeiture by Federal Express to the claimants' apartment, where agents had recently seized the money the government now sought to forfeit.  Five days after the notice was sent, it was returned as "undeliverable."  However, the  government did nothing more to ascertain the claimants' address or to notify them again.  The court held that the initial notice was proper but that the government did not act reasonably after the notice came back undelivered.  According to the court, the government need not "seek out claimants in each case where its initial notice is returned undelivered" (
Garcia
, 235 F.3d at 291), but it must give
 notice reasonably calculated under the circumstances to apprise a party of an impending proceeding.  These circumstances include those that develop after the notice is first sent.  
Garcia
, 235 F.3d at 291.  In 
Garcia
, the claimants were represented by counsel and had sued the government to get the money returned.  For these and other reasons, the government easily could have learned the claimants' address and sent a new notice there.  
Garcia
, 235 F.3d at 291.

In 
Montgomery
, federal agents entered the claimant's apartment, arrested him, and seized money they suspected came from drug sales.  The government started proceedings to forfeit the money administratively, sending the claimant notice by certified mail to the apartment.  Three weeks later, the notice was returned unclaimed.  The government did nothing more to notify the claimant, other than by publication
, and the property was forfeited.  The 
Montgomery
 court set aside the forfeiture, reasoning that, although notice by mail usually satisfies due process, the return of the notice as unclaimed should have warned the government that the claimant likely did not learn of the pending forfeiture.  The government could not reasonably rely on a notice that it knew was unsuccessful; that was no different from deliberately mailing the notice to the wrong address at the outset.  
Montgomery
, 802 F. Supp. at 936.  As the government knew that the claimant had counsel in a pending state criminal case, it easily could have learned the claimant's new address or at least have notified him though his attorney.  
Montgomery
, 802 F. Supp. at 937.

Other courts have held that, when a notice is returned unclaimed, the State must try to renotify the person whose property is at stake.  See, 
e.g.
, 
Small
, 136 F.3d at 1337; 
United States v. Rodgers
, 108 F.3d 1247, 1252-54 (10th Cir. 1997); 
City of Boston v. James
, 26 Mass. App. 625, 629, 530 N.E.2d 1254, 1256 (1988).

We return to the case at hand.  The parties agree that the facts here do not fit the first of the three scenarios we have described.  The trial court did not conclude, and the record does not show, that on either May 19, 1999, or July 6, 1999, the State knowingly mailed the Notice to an incorrect address.  However, the court apparently did conclude that this case fit within the second scenario we have described.  The court stressed that the State should have known  from matters on file that petitioner had already moved to the Rockford address; thus, the State did not act reasonably in mailing the Notice to the Byron address.  

On appeal, the State asserts that the trial court unduly extended 
Smith
 to a party who, unlike the claimant in 
Smith
, was not incarcerated at the time the State mailed him the pertinent notice.  The State appears to argue that this distinction is crucial because (1) a prisoner's address is easy to ascertain; (2) petitioner should have told the State his new address; and (3) it is possible that petitioner received the original Notice but failed to act on it, in which case the trial court's ruling would reward him for his own lack of diligence.

The State's attempts to confine the reasoning in 
Smith
 do not strike us as sound.  In 
Smith
, we simply applied the broad rule that due process requires notice that is reasonable in view of what the State actually knows 
and
 what the State should know through the exercise of reasonable diligence.  Of course, whether the property owner is incarcerated may bear on the reasonableness of the State's efforts and on whether his address is reasonably ascertainable.  However, the fundamental question is still whether the State has acted reasonably under all the circumstances.

The State correctly asserts that the owner of seized property is required to notify promptly the seizing agency of any change of address.  See 725 ILCS 150/4(1) (West 1998).  The statute is silent as to the consequences to an owner for the failure to notify the State of a change of address.  We will not find that the failure to so notify releases the State from its constitutional obligation (set forth above) to provide due process of law.  Moreover, as noted above, the statute also requires the State to request a return receipt, and that has been interpreted to mean that service by certified mail is not valid until it is received.  
Devine
, 316 Ill. App. 3d at 469.  We will not hold that the failure of the owner to provide notice of his change of address transforms an incomplete and invalid notice into a valid and complete one.  An undelivered certified letter is not a license to proceed; the return of such a letter must put the State on notice that further inquiry must be made. It is not reasonable for the State to proceed with the forfeiture under such circumstances.  It has no information as to why the owner has not received the notice.       Finally, the State's speculation that petitioner may have received the Notice and deliberately ignored it is without any support in the record.  Petitioner's petition contradicts such speculation.  Moreover, the State again puts the cart before the horse.  As cases such as 
Garcia
 and 
Montgomery
 hold, the return of a notice as unclaimed does not entitle the State to assume that the claimant received the notice but ignored it.  Rather, the State's initial lack of success warns the State that very likely the claimant did not receive the notice and the State must act further.

That the State's attempts to limit 
Smith
 are unpersuasive does not establish that
 the trial court's reasoning was correct.  We may still ask whether, when the State mailed the Notice on May 19, 1999, it was charged with knowing  petitioner's latest address.  The trial court apparently reasoned that, as petitioner filed a record of his new address with the circuit clerk on May 14, 1999, the State should have known this address before it sent the Notice.  We need not decide whether this reasoning is sound.  We hold that, even if mailing the Notice to the Byron address the first time was reasonable, the State did not act properly after the Notice came back unclaimed.  The trial court did not explicitly rely on this reasoning, but we may affirm the judgment on any ground warranted.  See 
People v. Everette
, 141 Ill. 2d 147, 158-59 (1990).

At the trial court hearing, the State all but conceded that, after the Notice came back unclaimed, the State did little to notify petitioner of the impending forfeiture.  However, the State maintained that its obligations were minimal and that it had done enough.  That was incorrect.  Contrary to what the State claimed at the hearing, due process does require the State--within reason--to "try to follow people around and try to figure out where they are."  Under the facts here, the State did not fulfill its obligation. 

The Notice was returned on June 7, 1999.  By then, petitioner had lived in Rockford for over three weeks, his new address had been on file in the circuit clerk's office for about as long, and he had counsel in a criminal case based on the same facts as the forfeiture proceeding.  Additionally, five days earlier, the trial court had modified petitioner's bond in the criminal case by barring him from any contact with Gloria Barker, who lived at the Byron address.  Thus, by June 2, 1999 (at the latest), the State should have been aware that petitioner very likely did not live at the Byron address any more.  

The State easily could have ascertained petitioner's correct address and mailed a timely notice there or alerted petitioner through his counsel.  Instead, the State waited until almost a month after the notice of pending forfeiture was returned as undeliverable and then mailed the notice of declaration of forfeiture to the same address.  By the time petitioner actually received the Notice--which he did by happenstance--the period for contesting the forfeiture had expired.  See 725 ILCS 150/6(C)(1) (West 1998).  The State did not provide notice reasonably calculated to inform petitioner of the pending proceeding, and the trial court correctly vacated the forfeiture.

The judgment of the circuit court of Ogle County is affirmed.

Affirmed.

McLAREN and CALLUM, JJ., concur.