THE PEOPLE *ex rel.* RICHARD A. DEVINE, State's Attorney of Cook County, Plaintiff-Appellee, v. $30,700.00 UNITED STATES CURRENCY *et al.*, Defendants (Rashawn Carter *et al.*, Petitioners-Appellants).

First District (6th Division)   No. 1—99—1496

Opinion filed August 18, 2000.—Rehearing denied September 28, 2000.

David R. McLenachen, of Chicago, for appellants.

Richard A. Devine, State's Attorney, of Chicago (Renee Goldfarb and William D. Carroll, Assistant State's Attorneys, of counsel), for appellee.

JUSTICE CAMPBELL delivered the opinion of the court:

Petitioners, Rashawn Carter and Ida Carter, appeal from an order of the circuit court of Cook County, entering the forfeiture of two sums of United States currency, for a total sum of $51,511. On appeal, petitioners contend that the forfeiture order was void for lack of notice. For the following reasons, we reverse the judgment of the trial court.

BACKGROUND

The following facts are relevant to this appeal. On August 4, 1998, the State filed a consolidated complaint for forfeiture pertaining to $30,700 seized from Rashawn Carter and $20,811 seized from a safety deposit box at Drexel National Bank registered to Ida Carter, Rashawn's grandmother, pursuant to section 505 of the Illinois Controlled Substances Act (720 ILCS 570/505 (West 1998)) (the Act).

The complaint alleges that on May 23, 1998, Chicago police officers received information in the form of a tip from a citizen that a man with a gun entered Drexel National Bank, 3401 South King Drive. Police officers entered the bank and observed Rashawn holding a white cylinder-shaped object under his arm. The police performed a "protective pat-down" of Rashawn and found several bundles of currency on Rashawn's person in an amount totaling $30,700. The police subsequently determined the cylindrical object to be a white sock filled with bundles of currency. The complaint alleges that Rashawn gave conflicting answers to police inquiries regarding the exact amount and source of the currency. Rashawn told police that he did not have an account at the bank and that he was planning to rent a safe deposit box.

The complaint further alleges that once the officers "relocated" their investigation to the 21st district police station, Rashawn admitted that he was a member of the Gangster Disciples street gang, that the money did not belong to him, and that he had "messed up" while attempting to deposit the money in the bank. Rashawn informed police officers that he had a prior arrest for cannabis.[1] The police performed what the complaint describes as a "money lineup" of the currency, a procedure whereby the currency is "hidden" and

---

[1]The complaint does not specify the details of the charges associated with Rashawn's prior arrest.

"discovered" by narcotics-sniffing police dogs. A police dog, Bo, discovered the currency and gave a positive indication for the odor of narcotics.

The complaint further alleges that police discovered three separate safety deposit box keys on Rashawn's person. Rashawn eventually told police that one key belonged to a safe deposit box "in two separate banks in Peoria Illinois." Police ascertained that one of the other keys was for safe deposit box No. 2037 at Drexel National Bank and to which Rashawn had "access." Police obtained a search warrant for the safe deposit box and on May 26, 1998, performed a search of the box, recovering currency totaling $20,811. Police also subjected the currency recovered therefrom to a "sniff test" at the police station by another narcotics-sniffing dog, Thunder. The currency also indicated positive for the odor of narcotics. The State's complaint sought that all of the currency seized be declared contraband and forfeited, as violative of the Act.

On the day the State filed its complaint, August 4, 1998, the State mailed notice of the pending forfeiture proceedings and a copy of the complaint via certified mail with return receipt requested to Rashawn Carter at 4844 S. State Street, No. 1410, Chicago, Illinois. The notice was accompanied by the affidavit of Assistant State's Attorney Lewis Hu, who averred that notice of the forfeiture proceedings was sent by certified mail, with return receipt requested, to parties identified as having an interest in the money and that no claim to the money was filed.

The record reveals that the State also sent a notice of forfeiture to Ida Carter by certified mail on September 2, 1998, at 4844 S. State Street, No. 1410, Chicago. Ida's name, however, appears nowhere on the face of the State's complaint. Notices of the forfeiture proceedings appeared in the *Chicago Daily Law Bulletin* in editions published on August 7, August 14, and August 21, 1998.

Neither Rashawn nor Ida responded to the notices of forfeiture. On October 13, 1998, following a hearing, the trial court entered a default order forfeiting both Rashawn and Ida Carter's interest in the two sums of currency.

On January 13, 1999, Rashawn and Ida filed a joint motion to vacate the order of forfeiture, alleging that they never received notice of the forfeiture proceedings, and each attached affidavits. Rashawn averred that he was incarcerated in the Vandalia Correction Center from July 7, 1998, to November 10, 1998, and only learned of the forfeiture in November 1998, upon his return home.

Ida averred that she was the owner of safe deposit box No. 2037 at Drexel National Bank and that she received no notice of forfeiture of

the contents of her box at her residence within the Robert Taylor housing project.

In response, the State argued that petitioners failed to make the requisite showing of due diligence and meritorious defense as required under section 2—1401 of the Code of Civil Procedure (735 ILCS 5/2—1401 (West 1998)). The State further argued that written notice is effective when mailed, not when received, and therefore the State satisfied the statutory notice requirements of sections 4(A)(1) and 4(B) of the Drug Asset Forfeiture Act (725 ILCS 150/4(A)(1), (B) (West 1998)). On March 29, 1999, the trial court denied petitioners' motion to vacate the forfeiture order. This timely appeal followed.

OPINION

On appeal, petitioners Rashawn and Ida each contend that the trial court lacked jurisdiction to enter the order of forfeiture, as neither received notice of the proceedings. Petitioners argue that the order is therefore void and unenforceable. We note that the State combined two distinct forfeiture proceedings for the purposes of its complaint. We treat the two forfeitures separately for the purposes of this opinion.

I. Rashawn Carter and $30,700 United States Currency

■ In an effort to deter violations of the Illinois Controlled Substances Act (720 ILCS 570/100 et seq. (West 1998)) and the Cannabis Control Act (720 ILCS 550/1 et seq. (West 1998)), the General Assembly enacted the Drug Asset Forfeiture Procedure Act (Act) (725 ILCS 150/1 et seq. (West 1998)) establishing uniform procedures for the seizure and forfeiture of drug-related assets. The Act is to be interpreted in light of the federal forfeiture provisions contained in 21 U.S.C. § 881 (1994) as interpreted by the federal courts, except to the extent that the provisions expressly conflict. 725 ILCS 150/13 (West 1994). In addition, the Act is to be liberally construed to effectuate its remedial purpose. 725 ILCS 150/13 (West 1998).

■ Where the property seized is "non-real property that exceeds $20,000 in value excluding the value of any conveyance, or is real property," the Act provides for a judicial in rem procedure. 725 ILCS 150/9 (West 1998). The State's Attorney initiates the action by filing a verified complaint for forfeiture of the property (725 ILCS 150/9(A) (West 1998)), and mailing a copy of the notice of a pending forfeiture by certified mail, return receipt requested, to the current address of the owner or interest holder of the subject property (725 ILCS 150/4(A)(1) (West 1998)). The Act also provides that notice "served under this Act is effective upon *** the last date of publication, or the mail-

ing of written notice, whichever is earlier." 725 ILCS 150/4(B) (West 1998).

That the party giving notice must receive a return receipt signed by the addressee in order to accomplish service is a well-established requirement in Illinois law. In *Avdich v. Kleinert*, 69 Ill. 2d 1, 370 N.E.2d 504 (1977), a landlord brought a forcible entry and detainer action against a tenant for possession of premises and for rent. At trial, the plaintiff offered that he had sent a five-day notice to the defendant by certified mail, although no return receipt was requested. The trial court entered judgment in favor of the landlord. On appeal, this court reversed. *Avdich v. Kleinert*, 44 Ill. App. 3d 320, 358 N.E.2d 1 (1976).

■ In upholding the determination of this court, the supreme court reviewed the notice requirements of the Illinois forcible entry detainer statute as applied to the forfeiture of a leasehold interest. The court explained that the act governing possession of property is " 'a special statutory proceeding, summary in its nature, in derogation of the common law, and a party seeking this remedy must comply with the requirements of the statute, especially with respect to jurisdiction.' " *Avdich*, 69 Ill. 2d at 6, quoting *West Side Trust & Savings Bank v. Lopoten*, 358 Ill. 631, 637 (1934). The court thus held that the statute required the party giving notice to receive a return receipt signed by the addressee to accomplish service:

> "If mere mailing of a five-day notice was sufficient service, then proof of mailing would be all that was required to show service, and there would be little reason to require a returned receipt from the tenant. The apparent purpose of the returned receipt is to facilitate proof of service on the tenant, and, in our opinion, the inclusion of this provision in the statute clearly indicates a legislative intent that service of a notice by certified mail is not to be considered complete until it is received by the addressee." *Avdich*, 69 Ill. 2d at 9, 370 N.E.2d at 508, citing 58 Ill. 2d R. 105(b)(2).

The "return receipt requested" language cited above is not idle but, rather, expresses the true intent of our legislature. We are confident that where our supreme court interpreted the language of the forcible entry and detainer statute in such a fashion as to protect from improper evictions, it may conclude similarly to protect from an improper forfeiture of personal property. We conclude that the State's notice to Rashawn is invalid for failure to receive a return receipt from Rashawn.

In addition, this court has determined that sending notice of a forfeiture proceeding to a defendant's home address while the defendant is incarcerated in a county jail fails to reasonably apprise the defendant of the pending forfeiture proceedings in violation of due process. Such notice is therefore void:

" 'The guarantee of due process of law extends to every governmental proceeding which may interfere with personal or property rights, whether the process be legislative, judicial, administrative, or executive.' [Citation.] '[D]ue process of law, at a minimum, prohibits the deprivation of property without providing notice and an opportunity for a hearing appropriate to the nature of the case.' " *People v. Smith*, 275 Ill. App. 3d 844, 849, 656 N.E.2d 797 (1995), quoting *People ex rel. Harris v. Parrish Oil Production, Inc.*, 249 Ill. App. 3d 664, 668, 622 N.E.2d 810 (1993).

The *Smith* court based its determination on numerous federal decisions. See, *e.g., Ramirez v. United States*, 767 F. Supp. 1563, 1570 (M.D. Fla. 1991) (court will set aside forfeiture where government fails to follow statutory administrative forfeiture procedure); *Winters v. Working*, 510 F. Supp. 14 (W.D. Tex. 1980) (where address of claimant was known, insufficient notice to claimant of administrative forfeiture hearing was violation of due process even though notice was made in accordance with statute; forfeiture proceeding held void); *Jaekel v. United States*, 304 F. Supp. 993 (S.D.N.Y. 1969) (summary administrative forfeiture of vehicle held void for violation of due process where notice to owner by publication was insufficient); *United States v. Woodall*, 12 F.3d 791, 793-95 (8th Cir. Mo. 1993) (judicial review is fundamental safeguard against government agencies and public officials who wrongfully seize or hold citizen's property; if government has incarcerated claimant who did not receive actual notice of administrative forfeiture in time to decide whether to compel agency to proceed by judicial condemnation, he is entitled to have forfeiture declaration voided; cause remanded for further findings); *Robinson v. Hanrahan*, 409 U.S. 38, 34 L. Ed. 2d 47, 93 S. Ct. 30 (1972) (in forfeiture proceeding, where state mailed notice to defendant's home address while defendant was confined to county jail, notice was not reasonably calculated to apprise owner of pendency of proceeding and deprived owner of due process of law even though manner of service was permissible under state statute).[2]

---

[2]The Sixth Circuit Court of Appeals recently noted a circuit split over whether the required actual notice of a forfeiture proceeding involving an incarcerated person's property is met by proof of receipt by the corrections facility rather than proof of receipt by the inmate. *United States v. Poe*, No. 99—5089 (February 7, 2000) (unpublished). The Ninth and Tenth Circuits find institutional receipt sufficient, while the First, Second, and Eighth Circuits find that a corrections officer's signature is less than reliable assurance that the incarcerated property owner has received actual notice. Nevertheless, this record does not reveal that any notice of forfeiture whatsoever was sent to the Vandalia Correctional Institution where Rashawn was incarcerated.

Here, the parties agree that Rashawn failed to receive notice of the proceeding. Thus, where Rashawn's address at the Vandalia jail was readily ascertainable by the State, yet notice of forfeiture was sent to Rashawn's home address, the notice was not reasonably calculated to apprise Rashawn of the pending forfeiture proceeding. A decision by a unit of government may be declared void and may be set aside where the governmental unit proceeds without giving the required statutory or due process notice to an interested party. *Interstate Contractors v. Industrial Comm'n*, 81 Ill. 2d 434, 410 N.E.2d 837 (1980); *Greenlee Tool v. Industrial Comm'n*, 245 Ill. App. 3d 500, 614 N.E.2d 900 (1993). The State's Attorney's failure in this case to give the effective notice required by due process rendered the administrative forfeiture of $30,700, United States Currency seized from Rashawn's person void for lack of jurisdiction. See *Hanrahan*, 409 U.S. 38, 34 L. Ed. 2d 47, 93 S. Ct. 30; *People v. Braden*, 243 Ill. App. 3d 671, 678, 611 N.E.2d 575 (1993).

Although the disposition of this matter rests on improper notice of forfeiture, and the parties have not requested that this court address the issue of the State's burden of establishing probable cause to search Rashawn, we are disconcerted by several matters surrounding Rashawn's search and subsequent detainment.

■ The Act provides that the State shall have the initial burden to show the existence of probable cause for forfeiture of the property. 725 ILCS 150/9(G) (West 1998). Probable cause to arrest exists when circumstances within the arresting officer's knowledge are sufficient to warrant a man of reasonable caution to believe an offense has been committed and that the individual arrested has committed it. *People v. Hoover*, 250 Ill. App. 3d 338, 620 N.E.2d 1152 (1993); *People v. Earnest*, 224 Ill. App. 3d 90, 586 N.E.2d 449 (1991). Whether there is probable cause to justify an arrest depends on the totality of the circumstances known to the officer at the time of the arrest (*People v. Bell*, 96 Ill. App. 3d 857, 421 N.E.2d 1351 (1981)), including the officer's factual knowledge and his prior law enforcement experience. *People v. Earley*, 212 Ill. App. 3d 457, 570 N.E.2d 1235 (1991).

Probable cause to arrest does not require the degree of proof necessary for conviction, but more than a hunch or mere suspicion is required. *Bell*, 96 Ill. App. 3d 857, 421 N.E.2d 1351. This court has held a mere "hunch" does not provide probable cause to search a suspect for drugs. *People v. Elliot*, 314 Ill. App. 3d 187 (2000). The touchstone in fourth amendment analysis is always the reasonableness of the particular governmental intrusion, which depends on balancing the public interest in crime prevention against the individual's right to personal security free from arbitrary interference by

police officers. *People v. Rainey*, 302 Ill. App. 3d 1011, 706 N.E.2d 1062 (1999); *People v. Gonzalez*, 184 Ill. 2d 402, 704 N.E.2d 375 (1998).

■ The record shows Rashawn was detained (not arrested) based on a "tip" from a citizen, and then "relocated" to the station house. We cannot conclude from this record that the police had probable cause to detain and "relocate" Rashawn based on the citizen informant's "tip." Having received the tip, and after the search of Rashawn revealed only currency and no weapon, the State failed to show that any law was violated. As the State has failed to explain the term "relocate," we cannot determine whether Rashawn was arrested or whether he accompanied the police to the station voluntarily or against his will.

We are further troubled by the "sniff test" method used by police to determine that the currency was contaminated by narcotics. We note that numerous federal courts have questioned the probative value of "positive dog alerts" due to reports that reveal the high level of contamination of the nation's money supply with narcotics residue. See, *e.g.*, *United States v. United States Currency, $30,060.00*, 39 F.3d 1039 (9th Cir. 1994); *United States v. $191,910 in United States Currency*, 16 F.3d 1051, 1062 n.21 (9th Cir. 1994); *United States v. Fifty Three Thousand Eighty-Two Dollars in U.S. Currency*, 985 F.2d 245, 250 n.5 (6th Cir. 1993). The 9th Circuit has noted that currency contamination results from a combination of the practice of drug dealers using large sums of cash in drug transactions and the adhesiveness of certain drugs such as cocaine: " 'Cocaine can be easily transferred simply by shaking hands with someone who has handled the drug: a pharmacist, toxicologist, police officer, or drug trafficker.' " *U.S. Currency, $30,060.00*, 39 F.3d at 1042, quoting J. Wolfers, Note, *In re One Hundred Two Thousand Dollars: Cash Friendly Civil Forfeiture*, 1993 Utah L. Rev. 971, 979-80. Those bills contaminate others as they pass through cash registers, wallets, and counting machines and it is estimated that one out of three circulating bills has been used in a drug transaction. *U.S. Currency, $30,060.00*, 39 F.3d at 1042, citing *United States v. Six Hundred Thirty Nine Thousand Five Hundred & Fifty Eight Dollars in U.S. Currency*, 955 F.2d 712, 714 n.2 (D.C. Cir. 1992).[3] Given these statistics, the 9th Circuit found that it is extremely likely that a narcotics detection dog will positively alert when presented with a large sum of currency from the Los Angeles

---

[3] The 9th Circuit also cites J. Brazil & S. Barry, *You May be Drug Free, But is Your Money? Cocaine is Found on the Cash of 8 Non-users. The Test Suggests That a Drug Dog Would Detect Cocaine on Almost Anyone's Money*, Orlando Sentinel, June 15, 1992, at A6, in which it is noted that of eight

metropolitan area. The 9th Circuit concluded that " 'the continued reliance of courts and law enforcement officers on [such an alert] to separate 'legitimate' currency form 'drug-connected' currency is logically indefensible.' " *U.S. Currency, $30,060.00*, 39 F.3d at 1043, quoting *Jones v. Drug Enforcement Administration*, 819 F. Supp. 698, 721 (M.D. 1993).

The findings and conclusions of the 9th and other federal circuits are instructive. We therefore adopt the view that the "mere fact of prior contamination" fails to establish that the currency was actually exchanged for or intended to be exchanged for drugs by the person currently in possession of the currency. In our view, the "sniff test" is not enough to establish probable cause that the currency seized from Rashawn's person was connected to narcotics.

II. Ida Carter and $20,811 United States Currency

■ A similar analysis to that detailed regarding the search of Rashawn and the seizure of the currency on his person applies to the forfeiture of the $20,811 in currency seized from Ida's safe deposit box to the following extent: Ida was not properly apprised of the forfeiture proceedings through appropriate notice and the reliability of "sniff" test performed on the currency recovered from her safety deposit box is dubious. We hold that the seizure of the currency from Ida's safety deposit box is void for these reasons.

We further find that the State's forfeiture of the currency contained in Ida's safe deposit box represents an egregious violation of her fifth amendment rights. The fifth amendment guarantees an individual's right to privacy in his or her personal affects. By way of analogy, the United States Supreme Court has recently held that where the government has "not shown that it had any prior knowledge of either the existence or the whereabouts" of private papers, it cannot use subpoenas to go on fishing expeditions for possibly incriminating evidence and then indict citizens based on the papers that they are forced to produce. *United States v. Hubbell*, 530 U.S. 27, 45, 147 L. Ed. 2d 24, 41, 120 S. Ct. 2037, 2048 (2000).[4] The State's complaint

---

samples of cash taken from a police chief, a circuit judge, a state senator, a mayor, a community college president, the *Orlando Sentinel* editor, a reverend, and a county chairman, six out of the eight samples showed detectable amounts of cocaine that were "well within the range of a drug dog's detection ability."

[4]"What the District Court characterized as a 'fishing expedition' did produce a fish, but not the one that the Independent Counsel expected to hook." *Hubbell*, 530 U.S. at 42, 147 L. Ed. 2d at 40, 120 S. Ct. at 2046.

reeks strongly of the catch brought home from the type of fishing expedition frowned upon by the United States Supreme Court.

Illinois remains a fact-pleading state. *People ex rel. Fahner v. Carriage Way West, Inc.*, 88 Ill. 2d 300, 430 N.E.2d 1005 (1981). Therefore, the allegations in a complaint must set forth facts that satisfy the elements necessary to support a cause of action. *People ex rel. Scott v. College Hills Corp.*, 91 Ill. 2d 138, 145, 435 N.E.2d 463 (1982). The sufficiency of a complaint is an issue of law and our review is therefore *de novo. Toombs v. City of Champaign*, 245 Ill. App. 3d 580, 583, 615 N.E.2d 50 (1993).

In order to state a cause of action for forfeiture, the State must allege sufficient facts that, along with favorable inferences, will satisfy the State's burden of establishing probable cause to forfeit the property. Thus, a complaint for forfeiture must allege facts providing reasonable grounds for the belief that there exists a nexus between the currency and illegal drug activity, supported by less than *prima facie* proof but more than mere suspicion. *People v. $1,124,905 United States Currency & One 1988 Chevrolet Astro Van*, 177 Ill. 2d 314, 685 N.E.2d 1370 (1997).

Here, The State's complaint contains no allegations either against Ida or justifying the issuance of a warrant for the search of her safety deposit box. The complaint contains no specific allegations as to the alleged contents of the box; it is merely conclusory in nature. Having found a key on Rashawn's person, and learning that the key opened a safety deposit box at the bank, the police appeared to operate under the presumption that they had an absolute right to examine the contents of Ida's box.[5] We reject this presumption outright. The record shows that Ida's name alone appeared on the box. The State has failed to cite to any authority which holds that where the police find a safety deposit box key in the possession of a detainee they are given the right, *ipso facto*, to open that box.

## CONCLUSION

Notwithstanding the serious problems with probable cause and arrest revealed in this record, we conclude that where petitioners were not properly served and never became a party to the voided forfeiture proceeding, the declaration of forfeiture is without legal effect. See *Smith*, 275 Ill. App. 3d at 851. We therefore reverse the judgment of the trial court and remand this cause thereto, to vacate the order of

---

[5]This court observes that it is not uncommon for family members to give extra keys to such secured personal property as dwellings and bank safety deposit boxes to other family members for safe keeping.

forfeiture entered on October 13, 1998, as *void ab initio* for lack of jurisdiction.

Reversed and remanded.

ZWICK, P.J., and BUCKLEY, J., concur.