2021 IL App (2d) 200764-U
No. 2-20-0764
Order filed August 26, 2021

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) | Appeal from the Circuit Court of Kane County. |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | No. 17-MR-842 |
| | ) | |
| $8,986 UNITED STATES CURRENCY and 2002 CHRYSLER TOWN & COUNTRY MINIVAN VIN 2C4GP4433R728889, | ) ) ) | |
| | ) | |
| Defendants, | ) | Honorable |
| | ) | Joseph M. Grady, |
| (Isidro Pena, Claimant-Appellant). | ) | Judge, Presiding. |

JUSTICE ZENOFF delivered the judgment of the court.
Justices McLaren and Hudson concurred in the judgment.

**ORDER**

¶ 1    *Held*: The State showed probable cause for forfeiture of $8986 in cash found on defendant's person after a traffic stop. There was a rational basis for inferring that the cash was related to drug trafficking, given that the cash was packaged in bundles, defendant was unable to provide the origin of the cash, and a police dog alerted to the scent of narcotics inside and outside of defendant's vehicle.

¶ 2    The State filed an amended complaint for forfeiture under the provisions of the money laundering statute in the Criminal Code of 1961 (Code) (720 ILCS 5/29B-1 (West 2016)), seeking

forfeiture of $8986 in United States currency found on claimant, Isidro Pena, during a traffic stop. Following a hearing, the trial court found that the State met its burden of proving probable cause for the forfeiture of the currency and that claimant failed to meet his burden of proving by a preponderance of the evidence that he had a lawful interest in the currency. The court terminated claimant's interest in the currency. Following the denial of his motion to reconsider, claimant timely appealed. We affirm.

¶ 3                          I. BACKGROUND

¶ 4      On April 27, 2014, Kane County Sheriff's deputy Ronald Hain initiated a traffic stop of a van driven by claimant. Claimant was subsequently arrested and charged with money laundering (720 ILCS 5/29B-1(a)(1.5) (West 2014)). Claimant's van was seized, along with $8986 in United States currency and two cell phones. The State sought forfeiture of the property in the criminal case. In the meantime, the trial court denied claimant's motion to quash arrest and suppress evidence. When the case was called for trial, the State nol-prossed the money laundering charge. Claimant subsequently moved for return of the property. He sought to vacate the forfeiture for lack of notice. The court denied the motion, finding that the notice was proper. We disagreed. See *People v. Pena*, 2017 IL App (2d) 151203, ¶ 1. We vacated the forfeiture and remanded for further proceedings. *Id.* ¶ 30.

¶ 5      On remand, on July 6, 2017, the State filed a new complaint for forfeiture (under a new case number), which it amended on September 12, 2018. The amended complaint alleged, *inter alia*, that the money was subject to forfeiture as it "was criminally derived property that was being transported by [claimant] with intent to promote or carryon [*sic*] the unlawful activity of drug trafficking in a felony violation of the Illinois Controlled Substances Act and/or the Cannabis Control Act."

¶ 6    The amended complaint alleged as follows. During the April 27, 2014, traffic stop, a search of claimant revealed $466 in United States currency in his wallet, two bundles of currency, totaling $940 and $320, in his pants pocket, and two bundles of currency, totaling $3020 and $4260, in his vest. The bundles were banded together. Before the search, claimant had denied having large amounts of money in the vehicle. A drug-sniffing dog made a positive alert to the odor of narcotics on the interior and exterior of the vehicle. Claimant told Hain that he and his passenger, who he claimed was his nephew, were traveling back to Colorado after attending a three-day party in Chicago. Receipts located in claimant's pants pocket indicated that he had not been in Chicago for the past three days. The vehicle displayed active Colorado license plates; active California license plates were found in the vehicle. Neither individual had a valid driver's license.

¶ 7    On October 22, 2018, claimant moved to dismiss the amended complaint, arguing that it failed to allege the misconduct that gave rise to the forfeiture. He further argued that it only related "an unfounded suspicion of general criminal activity." On March 5, 2019, the trial court denied the motion "for the reasons set forth on the report of proceedings" and ordered claimant to file an answer or otherwise plead. (The record does not contain a transcript of the hearing or an acceptable substitute.) Claimant ultimately filed a verified answer on November 15, 2019.

¶ 8    The matter proceeded to a hearing on January 30, 2020, and August 31, 2020. The record does not contain a transcript from the proceedings. However, the parties have submitted an agreed statement of facts. We summarize that statement in the following paragraphs.

¶ 9    The hearing was held pursuant to the provisions of the money laundering statute in effect before July 1, 2018 (720 ILCS 5/29B-1 (West 2016)). The scope of the hearing was limited in two major respects. First, based on claimant's affirmative defense, his evidence as to his lawful interest in the money was limited to evidence of social security benefits he previously received and his

previous sales of tires in Mexico. Second, pretrial orders "barred the [c]laimant from presenting evidence on certain issues[:] (a) [t]hat the currency was his life savings (b) [t]hat someone else had an interest in the currency (c) [t]hat the search was not proper or a violation of rights [, and] (d) [t]hat the physical evidence from the search should be suppressed."

¶ 10    Claimant and Hain each testified, and the court viewed video from the dashboard camera of Hain's squad car showing the discovery of the money and claimant's statements to Hain.

¶ 11    On April 27, 2014, Hain stopped a van driven by claimant on Interstate 88, because the van's license plate frame obstructed the issuing state's name. Claimant told Hain that he lived in California. Claimant did not have a valid California driver's license. Claimant told Hain that he and his passenger, who was claimant's nephew, were traveling back to Colorado after attending a three-day party at claimant's sister's house in Chicago. The passenger did not have a valid Colorado driver's license. Receipts discovered on claimant showed that he had been traveling from California and that he had not been in Chicago for the past three days. The court admitted the receipts into evidence. Hain also discovered that, although the van bore recently issued Colorado license plates, there was a set of active California plates in the van. The court admitted photographs of the license plates into evidence. A K-9 officer was brought to the scene and advised Hain, in the presence of claimant, that the dog gave a positive alert to the odor of narcotics on both the outside and inside of the van. (The agreed statement of facts indicates that claimant objects on hearsay grounds to the statement from the K-9 officer.) No narcotics were found in the van.

¶ 12    In response to Hain's questions, claimant denied having large amounts of money in the vehicle. A search of claimant disclosed $446 in currency in his wallet, two "bundles of currency" totaling $940 and $320 in his pants pocket, and two "bundles" in his vest pockets, totaling $3020 and $4260. "Both bundles were banded together with elastic hair bands. Additional hair bands

were discovered in the vehicle." Claimant told Hain that he had the money "to maybe buy a house and to pay his bills." Hain asked claimant where he got the money. "Claimant did not provide any documents or other factual basis to Sgt. Hain on the origin or his lawful ownership of the money found on his person." (The agreed statement of facts indicates that claimant objects to this statement "on grounds that [he] was not asked for any documents on the currency.") The court admitted into evidence pictures of the "hair bands" and the "banded bundles of currency."

¶ 13    Claimant testified that he was 67 years old and that he received monthly $1000 in social security disability benefits. He testified that he purchased the van at an auction. He identified receipts from using his credit card while traveling from California to Chicago. He admitted that he had not produced any credit card statements in discovery. The court admitted the receipts from credit card transactions into evidence. Claimant acknowledged that he claimed during discovery that he did not have bank accounts and did not file tax returns. This explained, he said, why he produced no such documents in discovery. He also recognized that he claimed during discovery that he sent funds from his social security benefits to Mexico to support his wife and daughter. He testified that he also sent money to his sister in Chicago, his sister in Colorado, and his brothers in California. "The Social Security Administration Form 1099's admitted into evidence by the Court were directed to [c]laimant at an address in Kansas City, Kansas." Claimant admitted that he did not reside in Kansas City. He was unable to state how he accessed the benefit funds, which were paid by check each month. He was unable to testify as to the amount of his monthly expenses for 2013 and 2014. Claimant testified that he sold tires in Mexico and received a commission on each sale. "Mexican tire invoices" were admitted in evidence, but they did not reflect commissions, and claimant could not state how much commission he earned from tire sales in 2013 and 2014. He denied keeping any documents showing his income from selling tires. "Claimant stated that he

received his commissions in cash when one of his friends would cross the Mexico/USA border and bring him an envelope full of currency." (The agreed statement of facts indicates that claimant objects to this statement as mischaracterizing his testimony.)

¶ 14 Following the testimony and the arguments of counsel, the trial court issued on August 31, 2020, an order finding that the State showed probable cause for seizing the funds and that claimant failed to prove by a preponderance of the evidence that he had a lawful interest in the funds. The court's order listed 3 exhibits introduced by claimant and 15 exhibits introduced by the State. The court also noted that it considered Hain's and claimant's testimony as well as the dashcam video from Hain's squad car. Neither the video nor the exhibits appear to have been filed with the record on appeal.

¶ 15 Claimant filed a motion to reconsider, arguing that there was no testimony that the money "was proceeds from some unknown crime" or that contradicted his claim that "the money belonged to him." Following a hearing, the trial court denied the motion "for the reasons set forth in open court." (The record does not contain a transcript of the hearing or an acceptable substitute.) The court found no just reason to delay enforcement or appeal of the order. See Ill. S. Ct. Rule 304(a) (eff. Mar. 8, 2016).

¶ 16 This timely appeal followed.

¶ 17                                    II. ANALYSIS

¶ 18 Claimant's brief is hardly a model of clarity. He presents the issue on appeal as: "Whether the trial court erred in finding as a matter of law, and against the manifest weight of the evidence, that [claimant] failed to meet his burden of proof at the hearing, *i.e.*, that he had a lawful legitimate ownership interest in the $8,986 and that the money was obtained through a lawful source." For relief, claimant asks that we vacate the trial court's finding that he failed to prove "that he had a

lawful legitimate ownership interest" and "that the money was obtained through a lawful source." However, claimant does not argue that issue. Instead, throughout the argument section of his brief, he intersperses challenges to the sufficiency of the amended complaint and the State's evidence in support of its initial showing of probable cause for forfeiture of the funds found on claimant.

¶ 19    In response, the State contends that any challenge to the sufficiency of the complaint is not properly before us and, further, that claimant has not provided this court with a sufficient record or an adequate brief to support a challenge to the trial court's forfeiture ruling. Alternatively, the State argues that the court's forfeiture ruling was not against the manifest weight of the evidence.[1] We address the issues in the order presented by the State.

¶ 20    First, we note that, despite expressly stating that "[n]o questions are raised on the pleadings," claimant makes comments throughout his argument that seem to challenge the sufficiency of the complaint. For instance, he asserts that "[t]here are no facts alleged in the Original[ ] or Amended[ ] Complaint that adequately and reasonably tell anyone, neither the parties nor the court, what [claimant] allegedly did to get the 'illegal' money, nor what he was doing to show an attempt at money laundering." However, as the State notes, claimant's comments suggesting a challenge to the trial court's ruling on his motion to dismiss do not warrant consideration. "When a trial court denies a motion to dismiss a complaint and a defendant files an answer, the defendant generally waives any objection to defects in the complaint." *Diaz v. Home*

_____

[1] The State also maintains that, to the extent claimant is challenging the propriety of Hain's initial search of claimant, the argument is not properly before us. We do not read claimant's brief as raising any such challenge.

*Federal Savings & Loan Ass'n of Elgin*, 337 Ill. App. 3d 722, 726 (2002) (citing *People v. $1,124,905 U.S. Currency & One 1998 Chevrolet Astro Van*, 177 Ill. 2d 314, 333 (1997)). In addition:

> "[a] corollary to the waiver principle is the doctrine of aider by verdict. Under that doctrine, where a defendant allows an action to proceed to verdict, that verdict will cure not only all formal and purely technical defects and clerical errors in a complaint, but will also cure any defect in failing to allege or in alleging defectively or imperfectly any substantial facts which are essential to a right of action." (Internal quotations omitted.) *Adcock v. Brakegate, Ltd.*, 164 Ill. 2d 54, 60-61 (1994).

Here, because claimant filed an answer to the amended complaint after his motion to dismiss was denied and then proceeded to a hearing with a full resolution on the merits, he cannot now complain about the sufficiency of the State's amended complaint. See *id.* at 62.

¶ 21 We next consider the State's argument concerning the sufficiency of the record. As noted, there was no transcript from the forfeiture hearing that occurred on January 30, 2020, and August 31, 2020. However, in the absence of a transcript, Illinois Supreme Court Rule 323 (eff. July 1, 2017) authorizes the appellant to file either a bystander's report of proceedings (see Rule 323(c) (eff. July 1, 2017)) or an agreed statement of facts (see Rule 323(d) (eff. July 1, 2017)). Here, the claimant and the State prepared and signed an agreed statement of facts detailing what transpired at the hearing. It was filed in the trial court on February 10, 2021, with no objection by the State. On March 11, 2021, claimant's counsel filed in our court a "Motion to File a Supplement to the Record on Appeal *Instanter*," seeking leave to supplement the record with the agreed statement of facts. Counsel stated that, after receiving the e-record, he discovered that the agreed statement of facts was not included. "The Clerk's office" advised counsel that the statement of facts was absent

because it had been filed after he filed his notice of appeal and that he would have to file a motion to supplement the record. The State did not object, and we granted the motion.

¶ 22    The State now challenges the agreed statement of facts as (1) untimely filed and (2) improper because claimant indicated, within the agreed statement, his objections to three included statements. However, given that the State signed the agreed statement of facts, made no objection when claimant filed the agreed statement of facts in the trial court, and made no objection when claimant sought leave to supplement the record on appeal with the agreed statement of facts, we find that the State is now estopped from challenging the agreed statement. See *People v. Siems*, 170 Ill. App. 3d 894, 897 (1988) (the State was estopped from challenging the accuracy of stipulation contained in an agreed statement of facts where it did not seek relief until seven months after it was filed and five months after the defendant filed his brief). Nevertheless, we will comment on the inclusion of claimant's objections in the agreed statement when relevant to our analysis.

¶ 23    We now turn to the sufficiency of claimant's substantive argument. We note that, although this forfeiture proceeding was brought under the money laundering statute, claimant does not cite the portion of the statute containing the elements of the offense. Rather, he cites only the statute's definition of "criminally deprived property" and its provision governing the distribution of forfeited property. The 16-page argument section of claimant's brief consists of numerous large block quotations from various cases. Of these 16 pages, there are only three paragraphs that could even be considered argument. "A reviewing court is entitled to have the issues clearly defined with pertinent authority cited and is not simply a depository in which the appealing party may dump the burden of argument and research." *Pecora v. Szabo*, 109 Ill. App. 3d 824, 825-26 (1982)). We will not serve as appellant's advocate and will address only the specific points raised by claimant.

¶ 24    Claimant argues that the State did "not show a nexus between the money and the earlier, unknown criminal offense." He asserts that "the imagined criminal activity is not even alleged or mentioned by the State" and that the evidence did "not give any reasonable suggestion of a crime having been previously committed."

¶ 25    To put claimant's argument in context, we set forth the applicable statutory provisions. The procedures governing this judicial *in rem* forfeiture action are contained in the money laundering statute (720 ILCS 5/29B-1 (West 2016)). Section 29B-1 of the Code provides:

"(a) A person commits the offense of money laundering:

(1) when, knowing that the property involved in a financial transaction represents the proceeds of some form of unlawful activity, he or she conducts or attempts to conduct such a financial transaction which in fact involves criminally derived property:

(A) with the intent to promote the carrying on of the unlawful activity from which the criminally derived property was obtained; or

(B) where he or she knows or reasonably should know that the financial transaction is designed in whole or in part:

(i) to conceal or disguise the nature, the location, the source, the ownership or the control of the criminally derived property; or

(ii) to avoid a transaction reporting requirement under State law; or

(1.5) when he or she transports, transmits, or transfers, or attempts to transport, transmit, or transfer a monetary instrument:

(A) with the intent to promote the carrying on of the unlawful activity from which the criminally derived property was obtained; or

(B) knowing, or having reason to know, that the financial transaction is designed in whole or in part:

(i) to conceal or disguise the nature, the location, the source, the ownership or the control of the criminally derived property; or

(ii) to avoid a transaction reporting requirement under State law." *Id.* § 29B-1(a)(1), (a)(1.5).

As noted, the State's amended forfeiture complaint alleged that the cash found on defendant's person was a criminally derived "monetary instrument" that defendant was transporting with the intent to promote or carry on the unlawful activity of drug trafficking. Under section 29B-1(b)(3), "[m]onetary instrument" is defined as, *inter alia*, "United States coins and currency." *Id.* § 29B-1(b)(3). Under section 29B-1(b)(4), "[c]riminally derived property" is defined as:

"(A) any property, real or personal, constituting or derived from proceeds obtained, directly or indirectly, from activity that constitutes a felony under State, federal, or foreign law; or

(B) any property represented to be property constituting or derived from proceeds obtained, directly or indirectly, from activity that constitutes a felony under State, federal, or foreign law." *Id.* § 29B-1(b)(4).

Section 29B-1(h)(1)(A) and (h)(1)(B) of the Code provides that the following are subject to forfeiture:

"(A) any property, real or personal, constituting, derived from, or traceable to any proceeds the person obtained directly or indirectly, as a result of a violation of this Article;

(B) any of the person's property, used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of, a violation of this Article[.]" *Id.* § 29B-1(h)(1)(A), (h)(1)(B).

¶ 26   Once the State initiates judicial forfeiture proceedings with the filing of a complaint, and the claimant then files an answer asserting a claim against the property, the trial court conducts a hearing on the complaint. See *id.* § 29B-1(*l*)(1), (*l*)(3), (*l*)(6). At the hearing, the "State shall show the existence of probable cause for forfeiture of the property." *Id.* § 29B-1(*l*)(7).[2] "During the probable cause portion of the judicial in rem proceeding wherein the State presents its case-in-chief, the court must receive and consider, among other things, all relevant hearsay evidence and information." *Id.* § 29B-1(*l*)(2). "If the State shows probable cause, the claimant has the burden of showing by a preponderance of the evidence that the claimant's interest in the property is not subject to forfeiture." *Id.* § 29B-1(*l*)(7). The "claimant must establish by a preponderance of the

---

[2] Claimant asserts that the State has the burden of proving forfeiture by a preponderance of the evidence. To be sure, the current version of the money laundering statute provides that "[a]t the judicial in rem proceeding, in the State's case in chief, the State shall show by a preponderance of the evidence that the property is subject to forfeiture." See 720 ILCS 5/29B-13(9) (West 2018). However, that provision did not become effective until August 3, 2018, (see Pub. Act. 100-699 § 20 (eff. Aug. 3, 2018) (adding 720 ILCS 5/29B-13)) and it expressly applies only to property seized on or after July 1, 2018. See 720 ILCS 5/29B-27(a) (West 2018). Thus, the higher standard does not apply.

evidence, that he or she has a lawful, legitimate ownership interest in the property and that it was obtained through a lawful source." *Id.* § 29B-1(*l*)(3).

¶ 27    We comment on our standard of review. In his statement of the "Standard of Review," claimant, without any citation to authority, contends that we review the trial court's ruling *de novo*. Later, again without citation to authority, claimant asserts that this court should "not reverse a trial court's ruling regarding forfeiture unless the ruling is against the manifest weight of the evidence." We agree with the State that claimant's later assertion is correct.

> "[I]n a forfeiture case, the circuit court, as the trier of fact, determines the credibility of the witnesses and evaluates their testimony. Also, the court may draw reasonable inferences and reach conclusions to which the evidence lends itself. Because the circuit court bases its conclusion upon its assessment of the evidence, a reviewing court will not reverse an order of forfeiture unless it is against the manifest weight of the evidence." *People v. A Parcel of Property Commonly Known as 1945 North 31st Street, Decatur, Macon County, Illinois*, 217 Ill. 2d 481, 507-08 (2005).

"A decision is against the manifest weight of the evidence only when an opposite conclusion is apparent or when the findings appear to be unreasonable, arbitrary, or not based on the evidence." *Id.* at 507 (quoting *Eychaner v. Gross*, 202 Ill. 2d 228, 252 (2002)).

¶ 28    "Probable cause in this context requires only a probability or substantial chance of the nexus and not an actual showing." *1945 North 31st Street*, 217 Ill. 2d at 505; see also *People ex. rel Waller v. $4,175 United States. Currency*, 239 Ill. App. 3d 857, 863 (1993) ("[T]he State must show a rational relationship between the contraband and the illegal activity in order to sustain its burden of proving probable cause for forfeiture."). The State's "evidence need not exclude other plausible hypotheses of the source of the money." *1945 North 31st Street*, 217 Ill. 2d at 505. " '[I]t

is the totality of the circumstances, not a minute parsing of each item of information, that leads to a finding of probable cause.' " *Id.* (quoting *United States v. One 1987 Mercedes 560 SEL*, 919 F.2d 327, 331 (5th Cir. 1990)).

¶ 29    Contrary to claimant's assertion, we note that the State alleged, *inter alia*, that the money was criminally derived property that he was transporting with the intent to promote or carry on the unlawful activity of drug trafficking. The evidence showed a rational relationship between the money and illegal activity. The State established that, in response to Hain's questions, claimant had denied having a large amount of currency. However, Hain discovered four bundles of money on claimant's person. The bundles were banded with elastic hair ties, and additional hair ties were found in the van. Hain asked claimant where he got the money, and claimant provided no "documents or other factual basis" to Hain as to the origin or ownership of the currency.[3] Evidence that the "criminally derived property is transported or possessed in a fashion inconsistent with the ordinary and usual means of transportation or possession of such property and where the property is discovered in the absence of any documentation or other indicia of legitimate origin or right to such property" (720 ILCS 5/29B-1(d)(6) (West 2016)) may be properly considered as evidence "that the property or proceeds were known to be some form of criminally derived property or from

---

[3] In the agreed statement of facts, claimant objects to these particular statements on the basis that he "was not asked for any documents on the currency." Regardless, claimant also failed to provide any "other factual basis" as to the origin or ownership of the currency. We note that the trial court viewed the video of the stop and was able to observe the interaction between Hain and claimant.

some form of unlawful activity" (*id.* § 29B-1(d)). The packaging of the money with rubber hair ties in separate bundles was inconsistent with the ordinary and usual means of carrying cash.

¶ 30    In addition to the packaging of the money and claimant's failure to account for its origin, a K-9 gave a positive alert to the odor of narcotics both on the interior and exterior of the van.[4] Claimant cites *People v. $30,700.00 United States Currency*, 316 Ill. App. 3d 464 (2000), for the proposition that " '[p]ositive dog alerts' on currency" are "at best, 'dubious.' " In that case, although the reviewing court reversed the trial court's forfeiture ruling based on the insufficiency of the forfeiture notice, the court went on to find that the police dog's positive alert on the money recovered from the claimant was insufficient to establish probable cause that the money was connected to narcotics. *Id.* at 471-73. However, not only were the court's comments made *sua sponte* and constituted *dicta*, the case is distinguishable because there the alert was made on the money itself. The reviewing court was concerned with "reports that reveal the high level of contamination of the nation's money supply with narcotics residue." *$30,700*, 316 Ill. App. 3d at 472. The court found "that the 'mere fact of prior contamination' fails to establish that the currency was actually exchanged for or intended to be exchanged for drugs by the person currently in possession of the currency." *Id.* at 473. Here, where the dog alerted to the interior and exterior of the vehicle, rather than to the money itself, we have no similar concerns. The court could have reasonably inferred that narcotics had been present in the van. See *Florida v. Harris*, 568 U.S. 237,

_____

[4] In the agreed statement of facts, claimant objects on the basis of hearsay to the statement that Hain was told by the K-9 officer that the dog gave a positive alert to the odor of narcotics. However, during the probable cause portion of the hearing, the court can "receive and consider, among other things, all relevant hearsay evidence and information." Id. § 29B-1(*l*)(2).

245-46 n.2 (2013) ("A detection dog recognizes an odor, not a drug, and should alert whenever the scent is present, even if the substance is gone (just as a police officer's much inferior nose detects the odor of marijuana for some time after a joint has been smoked).").

¶ 31    Further, the evidence also showed that claimant's statements to Hain regarding his travels were subsequently contradicted. For instance, claimant told Hain that he and his nephew were returning to Colorado after attending a three-day party at his sister's house in Chicago. However, receipts found on claimant showed that he had been traveling from California and had not been in Chicago for the past three days. Claimant also denied having large amounts of money. The trial court could have reasonably viewed claimant's statement as showing consciousness of guilt. See *People v. Milka*, 211 Ill. 2d 150, 181 (2004) (a false exculpatory statement is probative of consciousness of guilt). In addition, despite providing Hain with a California address, claimant did not have a valid California driver's license. We note, too, that the trial court viewed the video of the search and heard the statements claimant made to Hain. The video and exhibits considered by the trial court are not included in the record on appeal. See *People v. Foutch*, 99 Ill. 2d 389, 391-92 (1984) (in the absence of a sufficiently complete record, we resolve all insufficiencies against the appellant and we presume the court's ruling had a sufficient factual basis).

¶ 32    Accordingly, considering the totality of the evidence as represented in the agreed statement of facts, along with the absence of the exhibits, we cannot say that the trial court's finding of probable cause is unreasonable, arbitrary, or not based on the evidence, or that an opposite conclusion is apparent.

¶ 33    The cases cited by claimant do not warrant a different conclusion as they are readily distinguishable. See *$4,175.00 U.S. Currency*, 239 Ill. App. 3d at 863 (no probable cause for forfeiture where there was no rational relationship between the money found in the pocket of

claimant's pants located in his bedroom on his bed and the cannabis found in claimant's daughter's bedroom); *In re Fifty-Three Thousand Two Hundred Sixty Three Dollars*, 159 Ill. App. 3d 114, 122 (1987) (the statutory presumption of forfeiture for $50,000 found in a locked safe in a closet near a bag containing $263 and marijuana was rebutted by claimant's corroborated and uncontradicted testimony that he had recently borrowed $50,000 to remodel his restaurant, which the trial court expressly accepted).

¶ 34    We turn next to claimant's contention that the trial court erred in finding that he failed to prove, by a preponderance of the evidence, that he had a lawful, legitimate ownership interest in the property and that it was obtained through a lawful source. As noted, although claimant presented this contention in his initial brief as the sole "Issue for Review," he did not argue it. Illinois Supreme Court Rule 341(h)(7) (eff. Oct. 1, 2020), which governs the parties' briefs, requires that the "[a]rgument, which shall contain the contentions of the appellant and the reasons therefor, with citation of the authorities and the pages of the record relied on." Moreover, "[p]oints not argued are forfeited and shall not be raised in the reply brief, in oral argument, or on petition for rehearing." *Id.* Here, by failing to argue the issue in his opening brief, claimant has forfeited it. See *People v. Robinson*, 2013 IL App (2d) 120087, ¶ 15 ("[A]rguments raised for the first time in a reply brief are deemed forfeited."). In addition, claimant has forfeited the issue in his reply brief by failing to cite any authority to support it. See *id.* ("Because defendant fails to make any argument to support his contention in the original brief, and fails to cite any authority to support his new argument in the reply brief, defendant has forfeited his contention.")

¶ 35    In his reply brief, claimant asserts that he "entered into evidence physical documents from the Social Security Administration that he had received over $184,000 in disability payments." He cites pages C.109 to C.131 of the record. While those pages appear to be annual social security

benefit statements belonging to claimant, they are attached to claimant's amended answer (filed on July 24, 2018), which in turn was attached as an exhibit to the State's motion to dismiss the amended answer. The court subsequently struck the amended answer. Thus, we will not rely on them. And although the court's August 31, 2020, order indicated that it admitted claimant's "IRS Documents" into evidence as exhibit D, claimant failed to include the hearing exhibits in the record on appeal. In the absence of an appellate record sufficient to demonstrate that the trial court's finding was contrary to the manifest weight of the evidence, we presume that finding to be correct. *Lah v. Chicago Title Land Trust Co.*, 379 Ill. App. 3d 933, 938-39 (2008); *Foutch*, 99 Ill. 2d at 391-92.

¶ 36                                    III. CONCLUSION

¶ 37    For the reasons stated, we affirm the judgment of the circuit court of Kane County.

¶ 38    Affirmed.